Otis E. JONES et al., Plaintiffs,

v.

SCHOOL BOARD OF The CITY OF ALEXANDRIA, VIRGINIA, et al., Defendants,

Vickie Belk et al., Plaintiff-Intervenors.

Civ. No. 1770.

United States District Court
E. D. Virginia,
Alexandria Division.

Dec. 29, 1959.

Frank D. Reeves, Washington, D. C.,
Otto L. Tucker, Alexandria, Va., for
plaintiffs and plaintiff-intervenors.

John Barton Phillips and Earl F. Wagner, Alexandria, Va., Albertis S. Harrison, Jr., Atty. Gen., of Virginia, for defendants.

ALBERT V. BRYAN, Chief Judge.

The defendants' refusal to admit seventeen Negro pupils to certain schools in the City of Alexandria contravenes the injunction heretofore issued in this cause, the latest pleadings allege, in that the rejections were solely for race or color. Upon this issue the court makes the following fact findings with its legal conclusions thereon:

#### The Plan Requested

■ I. Intervenors at trial asked the court to direct the defendants to present a plan of desegregation consisting of a division of the City into school districts and prescribing that all children, white and Negro, within a district shall attend the school of that district. Aside from the power of the court to require that character of plan, and apart from the many other questions which would arise upon such a decree, the request ought now to be denied. Neither necessity, nor expedition, nor aid to the parties discloses the advisability of such an order. No matter the formulae or artificialities adopted, each contested administrative decision must ultimately be considered on its peculiar facts.

In recompense, these individual studies though tedious and tasking could lead to a clearer understanding and a freer recognition by the parties of their reciprocal obligations—something more enduring and of greater force than an injunction of any kind.

#### Contempt

■ II. To compel ready admissions in the future, intervenors would invoke the contempt process of the court. The suggestion is declined. In the first place, as the specific findings herein will reveal, the defendants in the greater number of the applications were warranted in their determinations. Further, for any abuse of administrative discretion or powers, an equity court has more fitting and effectual restraints and correctives.

But above all, it is a weak court that must depend for its strength upon the threat of contempt.

#### Criteria

III. These criteria have been used by the defendant Board and Superintendent in passing upon the instant requests for admissions:

"1. Relation of residence location of the pupil with reference to schools, or school, applied for.

"2. State of enrollment conditions in the schools concerned in any case, or cases, under discussion.

"3. Academic achievement and mental capacity as these factors enter into conclusions on requests for entry or transfer.

"4. Factors involving the health and/or well-being of the applicant which may have a bearing on the request from him.

"5. Any factors which might affect the mental or emotional stabil-

ity of the applicant so much as to become pertinent in placement determinations.

"6. Is the applicant a bona fide resident of the city and actually entitled to attend school here."

### Uniformity in Use of Criteria

IV. These criteria have been applied to all requests, of both white and Negro children, for entry into a school other than that in which the applicant had just been a pupil. The Assistant Superintendent goes over with each school principal the list of all new students entering that school and they review the names with these criteria in mind. There is no proof of mala fides on their part.

### Mental Tests

V. The mental examination given the pupils is customarily a group, not an individual, test. The form of the test is not something for the court; it is an administrative judgment to be made by the school officials. Certainly a test by groups cannot be declared unfair or unacceptable as a matter of law. This is confirmed when, as here, the same kind of test is utilized for all children, irrespective of their race.

### Specific Results of Criteria

VI. On review of the administrative application of the criteria to the present intervenors, the court finds and concludes that:

1. Six-year old pupil No. 1 applied for enrollment in the 1st grade at Ficklin, the school nearest his home. From the same neighborhood other Negro children were entered there last February. On the school tests he is reported as "not ready for first grade anywhere", his mental age as below 4 years, his I. Q. rating 0. The authorities place him in a "readiness class". There is no such group at Ficklin. The very nearest to him is at Houston School, but nine city blocks away, where he has been placed.

This administrative decision cannot be said to be without acceptable support. If there were some other six children, as the plaintiffs assert, in the 1st grade at Ficklin with an I. Q. comparable with No. 1's, and if I. Q. were the only measurement employed by the schools, his enrollment in Houston might indicate discrimination. But the School Board and Superintendent rely more on academic achievement than upon estimated mental capacity. When, as instantly, no past record is available, they must be allowed to use their knowledge and experience to judge of his achievement ability. As this court has previously held, the preference for actual accomplishment over I. Q. has the backing of reputable educationists. Therefore, it cannot be condemned as arbitrary or capricious. The plaintiffs' psychologists deem I. Q. to be the better standard because, they urge, it represents attainment potentiality; but this view does not prove the other untenable.

2. Rejected for the 1st grade of nearby Howard School, pupil No. 2 has been assigned to Lyles-Crouch, several miles from her residence. While her I. Q. is below normal, and well below the median for her grade at Howard, it is conceded that three white children upon this level, if not below, have been enrolled in this school. Not sustained by the evidence, the court must overrule her exclusion.

3. The circumstances of pupil 3 are almost identical with those of No. 2, and the ruling excluding her must also be overturned.

4. No. 4 qualifies both for Ficklin's 1st grade where he has applied, and for Houston's where he has been assigned. The School Board says they are equidistant from his house; his parents say Ficklin is 62 paces closer. The court cannot interfere in so minor a distinction as this, even if it be true that the white children once occupying the same house attended Ficklin.

5. Ramsay School 1st grade was sought by pupil 5. He was put in Lyles-Crouch, two or more miles away. Ramsay is undoubtedly the closer to his

home. In February, 1959 his sister was ordered entered in Ramsay or Patrick Henry nearby, but a brother and another sister were turned down on their petition to be moved to Henry from Lyles-Crouch. No. 5, on the School Board analysis, is comparatively classified in these words: "There is no other pupil in the grade applied for as low in I. Q. level as this boy." Again, "He is more adapted to a retarded class group than to a regular group." This, the court believes, in the knowledge and experience of the school officials is a reasonable ground for declining his request for Ramsay.

6. No evidential basis exists for disallowing the application of No. 6 for the third grade at Howard. The factors of "mental or emotional stability" do not warrant the Board's decision.

7. What has just been said of No. 6 must also be said of No. 7.

8. No. 8's application to enter grade 6 at Howard cannot be sustained. On the Board's assay he has an I. Q. of 84—dull normal. His achievement level is "4th grade 7 months", and only two children are at this level in Howard's 6th. Of these one has repeated two grades and is about to be transferred to a class for the emotionally disturbed. The other has "a better than average intellect" but has scored low because as a foreigner he is deficient in English.

9. As to pupil 9 the school officials report, "There is no student in the sixth grade at the Minnie Howard School who has as low an accomplishment level as this boy". He lives much closer to this school than to Lyles-Crouch, where he was placed, but the disqualification itself shows that the differentiation was not upon race. The refusal of the application cannot be disturbed.

10. With white children of the same or lower academic achievement, and considerably lower I. Q., attending Howard which is No. 10's school geographically, no sound foundation appears for declining him admission there. The contrary decision of the Board cannot stand.

11. "Only one child in the grade at Howard * * * has as low an average of achievement as" No. 11. It is, however, the nearest school. But the one comparable child is a repeater. Refusal of No. 11's request for Howard could not, then, be ascribed to race. A determination not to add another to the bottom of the class, when only one white has been so received, cannot be declared a discrimination for color. The Board's declination will not be upset.

12. Refusal of the request of No. 12 to enter Jefferson, in the 8th grade, is founded on the alleged incorrectness of the official records. The defendants say there is no record of her attendance in the second half of the 3rd grade or of any part of the 6th grade. But the answer is that the defendants allowed her to do so. Last session she was enrolled in the 7th grade without protest. She completed it successfully. Having a high I. Q., actual as well as comparative, the school test gives her a mental age of 13–5, a chronological age of 11–6 years. She was also turned down upon stability and emotional factors. Decision here must be reversed.

13. The defendants' administrative evaluations classify No. 13 thus: that his grade achievement of 4 years, 8 months is behind the level of Hammond High's 9th grade, which he seeks to enter, and there are only 2 other enrollees, out of 252, with as low an achievement level as he. The two are repeaters of the grade. He is certainly within the territorial area of Hammond. While it is a close case, the court cannot say in these circumstances the Board's rejection of him—while allowing two white repeaters to remain in this level— is solely based on race and color. The administrative determination is entitled to have the doubt resolved in its favor.

14, 15, 16 and 17. All of one family, Nos. 14, 15, 16 and 17 moved to Alexandria from Washington, D. C. in April, 1959. They live in the territory of the schools they seek. Nos. 15, 16 and 17

voluntarily sought Lyles-Crouch, then withdrew and applied for Ramsay. No. 14 did not apply to Hammond until the present session.

Nos. 14 and 15 are clearly entitled to be received in Hammond and Ramsay, respectively. The factor of stability-emotional cannot under the evidence prevail to bar them.

No. 16, if registered in Ramsay's 4th grade, as asked, would be behind the achievement level there by 2 years, 2 months. Only one child there now has an achievement level as low as No. 16—that child is a repeater. The determination not to increase this low level category would seem to be a substantive decision.

No. 17 would be 4 years behind the achievement level of the Ramsay 6th grade if his application were accepted there. No other child in that grade would have as low an achievement level. He would be lower than the lowest by almost a year. His rejection cannot be called unsound.

### Summary

The result is to order the admission of:

(1) Judy Belk to the 1st grade of the Minnie Howard School;

(2) Deborah A. Bradby to the 1st grade of the Minnie Howard School;

(3) Vickie Belk to the 3rd grade of the Minnie Howard School;

(4) Marie A. Bradby to the 4th grade of the Minnie Howard School;

(5) James O. Bradby to the 7th grade of the Minnie Howard School;

(6) Eva Ann Cooper to the 8th grade of Jefferson School;

(7) Betty Lou Gaymon to the 11th grade of Hammond High School; and

(8) Jo Ann Gaymon to the 1st grade of the Ramsay School: all effective at the commencement of the second semester, or its equivalent, of the current school session.

The defendants' determinations upon the requests of the other intervenors will not be altered.

### Directions for Order

Counsel for the intervenors will within 10 days, first submitting it to opposing counsel for comment as to form, present an appropriate order upon these findings and conclusions. The order shall also direct the defendants in the future, upon rejecting an application for transfer or initial enrollment, to notify the applicant, his parent or guardian in writing within 10 days of such rejection with the reasons therefor.