William J. SANDO, Plaintiff,

v.

**ALEXANDRIA CITY SCHOOL BOARD,**
Defendant.

Civ. A. No. 210–71–A.

United States District Court,
E. D. Virginia,
Alexandria Division.

Aug. 25, 1971.

Mark B. Sandground, and Jack Rephan, Washington, D. C., for plaintiff.

E. Waller Dudley, Alexandria, Va., for defendant.

## MEMORANDUM OPINION AND ORDER

OREN R. LEWIS, District Judge.

The plaintiff, William J. Sando, asks this Court to declare the so-called "K–

6–2–2–2" plan adopted by the Alexandria School Board on May 19, 1971, void and unconstitutional on the ground that the plan significantly impinges upon the educational process and risks the health and safety of his children.

The facts are not in dispute—most were stipulated.

Briefly stated, they disclose that the plaintiff's children, Thomas, age seventeen, and Steven, age fourteen, are duly enrolled in the Alexandria schools—Both attended the Francis C. Hammond High School during the 1970–71 school year. Steven will remain in the Francis C. Hammond school for the coming school year—Thomas will be assigned to the T. C. Williams High School.

The Sando children live at 5348 Thayer Avenue—approximately one mile from the Francis C. Hammond High School— some two and eight-tenths miles from the T. C. Williams High School. Busing time from this address to Hammond is seven minutes; to T. C. Williams, twelve minutes.

Alexandria maintained a dual school system prior to Brown I.[1] On December 29, 1959 the School Board was directed by this Court to admit eight black school children to what had previously been all-white schools. Jones v. School Board of City of Alexandria, Va., D.C., 179 F. Supp. 280 (1959)—Alexandria was then using a 7–1–4 school system. The School Board—without court order—changed to a 6–2–4 (middle school) system in 1964. This system remained in effect through the 1970–71 school year.

The K–6–2–2–2 plan—reorganizing Alexandria secondary schools—goes into effect with the beginning of the 1971–72 school year.

The plan is known as a "feeder system" whereby certain designated schools feed into other designated schools on the successive school levels throughout the school system.

The elementary school children, grades one to six, are enrolled in the schools nearest their homes. They will continue to attend their own elementary neighborhood schools until graduation—They will then be assigned to a designated "middle school" and upon graduation there, to either George Washington or Francis C. Hammond, and from there to the T. C. Williams Senior High School.

Age, maturation and curriculum, together with achieving a better racial balance, were used by the School Board in determining which particular elementary school should be assigned to a particular "middle school." The racial balance thus fixed remains constant throughout the secondary schools system.

Whether Alexandria has heretofore removed the last vestiges of the old dual school system and established a unitary system need not be determined—The School Board has seen fit on its own motion[2] to reorganize Alexandria's secondary school system for the purpose, among others, of obtaining a better racial balance—It also has under consideration plans for reorganizing the elementary schools.

■■ The responsibility for so doing clearly rests with the School Board. Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 (1955). It has the duty to take whatever steps might be necessary to convert to a unitary system (Green v. County School Board, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968))—and it must do so on or before July 1, 1971 (Adams v. School District Number 5, 444 F.2d 99 (4th Cir. June 10, 1971)).

As was said in Allen v. Asheville City Board of Education, 434 F.2d 902 (4th Cir. 1970):

"* * * [T]he mechanics of integration, where the purpose is obviously to implement the Brown II principle and effectively achieves that end, is

---

1. Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954).

2. No doubt it was encouraged to so do by HEW.

ordinarily a matter within the discretion of school administrators. The question is not whether [better plans are available], nor even whether substantial evidence supports the Board's decision, but is instead whether the Board's decision is so plainly unfair that it clearly amounts to invidious discrimination in violation of the equal protection clause [of the Constitution of the United States]."

■ It is important to remember that judicial powers may be exercised only on the basis of a constitutional violation. Remedial judicial authority does not put judges automatically in the shoes of school authorities whose powers are plenary.[3]

■ Reviewing the K-6-2-2-2 plan in this light, this Court knows of no constitutional provision, federal or state—and none has been cited—requiring the City of Alexandria to maintain neighborhood secondary schools for the use and benefit of the plaintiff's children. Further, judicial authorities seem to indicate "a schoolchild has no inalienable right to choose his school."[4]

Therefore, ceasing to use Francis C. Hammond, George Washington and T. C. Williams as four-year high schools, and converting Hammond and George Washington to ninth and tenth grades and T. C. Williams to an eleventh and twelfth grade school is constitutionally permissible.

Plaintiff's counsel, during argument, abandoned the claim that the busing here required would be injurious to the health of his client's children or that it significantly impinges on the educational process—In fact, he conceded that it would not—He contends, however, that

requiring the parents to pay the bulk of the transportation expenses makes the plan constitutionally impermissible.

There is no question that the K-6-2-2-2 plan will require more busing of secondary school students than was required under the 6-2-4 system—at a per student cost of eighty cents—thirty cents to be paid out of school funds—fifty cents by the parent—Free transportation will be provided those who cannot afford to pay.[5]

■ Clearly this added cost of approximately $100.00 per year for each child enrolled in the secondary schools will impose an unbearable hardship on many families—The parents of these children should not be required to pay such a disproportionate cost of desegregating the remnants of Alexandria's de jure dual school system—Such transportation costs should be paid out of local school funds and such allowances as are available from State and Federal sources for this purpose.

Although the question of free transportation was mooted in Allen v. Asheville Board of Education, supra, upon being furnished—it appears rather clear that the Asheville plan would have been declared unconstitutional absent free school bus transportation.

■ Desegregation plans cannot be limited to the walk-in school—Swann v. Charlotte-Mecklenburg, supra. Where necessary, as here, bus transportation must be furnished on an equal basis—free to all, regardless of race, color, creed or economic status.

The K-6-2-2-2 plan as adopted should be so amended; and

It is so ordered.

3. Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971).

4. Broussard v. Houston Independent School District, 395 F.2d 817 (5th Cir. 1968).

5. Those meeting EOC requirements; those living in public housing; and those on the free lunch and free textbook lists.