465 F.2d 16
 Maurice A. REICHMAN, on behalf of himself, and as sole heir
and survivor of Anna R. Reichman, Deceased, Appellant,
v.
PITTSBURGH NATIONAL BANK, in its own right, and as successor
to the assets, rights and liabilities of Fidelity Title and
Trust Company, Pittsburgh, Pennsylvania, as Trustee under
the Last Will and Testament and Trust Agreement of Morris
Rosenblum, Deceased.
 No. 72-1126.
 United States Court of Appeals,
 Third Circuit.
 Submitted June 12, 1972 Under Third Circuit Rule 12(6).
Decided July 27, 1972.
 
 Maurice A. Reichman, pro se.
 Melvin Schwartz, Cooper, Schwartz, Diamond & Reich, Pittsburgh, Pa., and Richard B. Tucker, Jr., Tucker, Arensberg & Ferguson, Pittsburgh, Pa., for appellee.
 Before SEITZ, Chief Judge, and VAN DUSEN and ADAMS, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Chief Judge.
 
 
 1
 Plaintiff appeals an order of the district court dismissing his complaint for lack of jurisdiction over the subject matter.
 
 
 2
 The plaintiff is a beneficiary of a trust created in October of 1928. The trust was one of four created by Morris Rosenblum, plaintiff's grandfather, under the terms of an Insurance Trust Agreement for which defendant's predecessor was designated trustee. The defendant, Pittsburgh National Bank, now serves as trustee.
 
 
 3
 The Trust Agreement established four trusts for the lives of the settlor's three children and nephew; upon the death of the life beneficiaries, the remainder would go to their children. Plaintiff is the sole child of Anna Reichman, now deceased, who was a life tenant of one of the trusts; when his mother died in 1962, plaintiff became entitled to the proceeds of the trust.
 
 
 4
 Part of the res of the trust consisted of life insurance proceeds. Under the terms of the settlor's will, also drawn in October of 1928, real estate owned by the settlor was to be added to the principal of the trusts.[1] Another provision of the will devised the residue of the settlor's estate to the trusts.
 
 
 5
 The settlor-testator died in October of 1928, shortly after creating the trusts and making his will. Defendant's predecessor acted as executor of the estate and, on May 3, 1933, its final account was confirmed. A final decree of distribution was then ordered by the state court. Defendant continues to administer the res of the trusts.
 
 
 6
 The real estate mentioned above, the management of which forms the basis of plaintiff's charges against the trustee, is located in Pittsburgh (Highland property). During most of defendant's administration the Highland property has been leased to a restaurant firm under various long-term agreements. On two occasions, in 1946 and 1952, defendant petitioned the Pennsylvania Orphans' Court for authority to lease the Highland property under long-term leases. The Court formally approved the leases after holding hearings. These proceedings and the administration and settlement of the estate in 1933 constitute the only management of these trusts by Pennsylvania courts.
 
 
 7
 Plaintiff, a New York resident, brought this action in the federal district court on the basis of diversity of citizenship.[2] Plaintiff's complaint seeks to surcharge the trustee for gross mismanagement of the real estate and also prays for an accounting by the defendant trustee. The complaint was filed on July 13, 1971. In August of that year the defendant submitted accounts to the Orphans' Court. Plaintiff and his fellow beneficiaries then filed exceptions to the accounting making claims which parallel those contained in the complaint dismissed by the district court.
 
 
 8
 The district court held that it lacked jurisdiction over the subject matter of the complaint. The court construed the action as essentially quasi-in-rem since plaintiff sought an accounting and the matters in dispute pertained to the "administration and restoration of corpus." It reasoned that the Orphans' Court exercised power over the res by authorizing the 1946 and 1952 leases and, therefore, the federal courts could not obtain exclusive control over the trust res as required for adjudication of a quasi-in-rem action. The district court believed that this conclusion was mandated by the Supreme Court's decision in Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285 (1939). Alternatively, the court held that if jurisdiction did exist, nevertheless abstention was appropriate in view of the Orphans' Court proceedings involving exceptions to the defendant's accounting.
 
 
 9
 Plaintiff contends that the district court's refusal to entertain his suit erroneously deprived him of his rightful access to the federal courts under diversity jurisdiction. We turn to that issue.I. JURISDICTION
 
 
 10
 The district court ruled that plaintiff's claims were quasi-in-rem in nature and that, since the state court had previously assumed supervisory jurisdiction over the trust res, exclusive federal jurisdiction did not exist. The court's characterization of plaintiff's action might be questioned. However, in view of our disposition of this appeal we need not decide whether the often unsatisfactory label "quasi-in-rem" was properly applied.
 
 
 11
 The leading case involving the issue presented by this appeal is Princess Lida of Thurn and Taxis v. Thompson, supra. The Supreme Court there unanimously ruled that the filing of an accounting by trustees in the Pennsylvania Common Pleas Court prior to commencement of a proceeding in the federal courts operated to vest the state court with exclusive jurisdiction. Defendant trustee here insists that the reasoning of Princess Lida requires affirmance of the district court's decision that it lacked jurisdiction over plaintiff's complaint. We do not agree. For unlike the facts in Princess Lida the only state court proceedings instituted prior to commencement of the federal court action were those seeking authorization of the 1946 and 1952 lease agreements. Any jurisdiction over the trust res which the courts might have possessed incident to those proceedings ceased when the authorization was given. This result obtains even though here, as in Princess Lida, the trust itself continued after the state court acted with respect to it.
 
 
 12
 If, the trustee's accounting here had been filed before commencement of the federal action, we would be constrained to arrive at the same result reached in Princess Lida. However, the present complaint was filed before defendant filed its accounting in the Orphans' Court. Thus, there was no lack of jurisdiction in the district court.
 
 
 13
 Both parties urge that In re Binenstock, 410 Pa. 425, 190 A.2d 288 (1963), supports their positions. But that case involved a jurisdictional dispute between two courts of the Commonwealth. Consequently, we do not find it persuasive on the jurisdictional issue here presented.
 
 II. ABSTENTION
 
 14
 The district court ruled that even if it possessed jurisdiction over the trust res, this was a proper case for abstention. It reasoned that "no question" existed as to a federal court's "inherent power" to stay its own proceedings, and that matters of trust administration were areas of state court expertise.
 
 
 15
 We agree that the facts here demonstrate a proper case for abstention. However, we do not justify that conclusion on whatever authority federal courts might possess to stay proceedings properly before them. Instead, we rely on the substantial identity of the issues raised in Orphans' Court with those presented in the district court and the special ability of the state court to decide those issues in view of its exclusive state jurisdiction over trusts and estates. We also think that administrative efficiency and convenience would best be served by permitting adjudication in the court having jurisdiction over both plaintiff and his fellow beneficiaries.
 
 
 16
 The judgment of the district court dismissing the complaint will be affirmed solely under the abstention doctrine.
 
 
 
 [1]
 One of plaintiff's principal contentions is that the real estate never became a part of the res of the life insurance trusts; that in reality the Will created a separate trust for that property, testamentary in nature, and distinct from the life insurance trusts, characterized as "inter vivos" by plaintiff. Hence, plaintiff's argument goes, any judicial action with respect to the testamentary real estate trust has no bearing on the inter vivos trust. In view of the court's disposition of this case, we need not answer this contention
 
 
 [2]
 Had plaintiff's fellow beneficiaries been made parties to this suit, diversity would have been destroyed