**Robert L. MAGAZINER et al.,
Appellants,**

v.

**Frank J. MONTEMURO, Jr., Administrative Judge of the Family Court Division of the Court of Common Pleas of Philadelphia County,**

**No. 71–1667.**

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
May 26, 1972.

Resubmitted Aug. 18, 1972.

Decided Sept. 29, 1972.

Sharon K. Wallis, Philadelphia, Pa., for appellants.

Joseph Matusow, Philadelphia, Pa., for appellee.

Before STALEY, ALDISERT and HUNTER, Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

The question presented is whether the district court should have reached the

merits of a claim sounding under the Civil Rights Acts, 42 U.S.C. §§ 1981 and 1983, wherein appellants, children of parties to a state court civil action adjudicating rights to their custody, and the children's counsel, have charged a state judge of depriving the children of federal constitutional rights by vacating the ex parte appearance of counsel on their behalf. The district court held that appellants had an adequate remedy at law, ruling that "if we have jurisdiction in this case, we decline to exercise it under the circumstances here involved on the state of the record as it exists today, and we shall, therefore, grant the defendants' motion to dismiss."

The Magaziner children are not adults: Robert Lee was born on January 8, 1955; Jonathan M., on June 19, 1958, and Diane, on February 6, 1960. The complaint stated that following certain trial and appellate proceedings brought by their parents over their custody, "[t]hey [the children] retained as counsel, Lisa Aversa Richette, Esquire, who on December 22, 1970, entered her appearance on their behalf in the custody case pending in the Family Court Division of the Court of Common Pleas of Philadelphia County." The entry of appearance was challenged, and following argument on the issue, the appearance was quashed by order on March 17, 1971. Appellants took no further action in the state court system, although the vacating of the appearance was a final and, therefore, appealable order under state law. At the time of the entry of the attorney's appearance the appellants were ages 15, 12 and 10 respectively.

Notwithstanding their tender years, they describe themselves in their complaint as "mature children." Neither the children nor their self-styled "next friend" and lawyer petitioned any state court for appointment of Mrs. Richette as guardian ad litem. They have alleged:

53. There is no statute, regulation, or court-promulgated rule in Pennsylvania providing for the representation of mature children by counsel of their own choosing and full due process hearing in contested custody cases and the common custom and usage of the Family Court Division of the Court of Common Pleas is to refuse to allow such representation and hearing.

We will affirm the judgment of the district court dismissing this action.

I.

Initially, there exists a serious problem of mootness. Notwithstanding the general nature of the relief demanded, as couched in requests for injunctive and declaratory relief, the specific case or controversy before the court was the action of the defendant, Judge Montemuro, in vacating the appearance of the children's self-styled next friend, Mrs. Richette, as their lawyer. Mrs. Richette is no longer a practicing attorney. She is now serving as Judge of the Court of Common Pleas of Philadelphia County, Pennsylvania.[1] The Pennsylvania Constitution provides that "judges shall devote full time to their judicial duties, and shall not engage in the practice of law. . . ." Art. 5, § 17, P.S.

Under these circumstances, appellants' claim stands in the same posture of mootness as did Zwickler's claim in Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969). That is, it is impossible for this court to order the requested relief because of Mrs. Richette's present inability to serve as counsel. Thus, even if a federal court reached the merits and were inclined to grant the requested relief, it would be impossible to effectuate the court's judgment. A comparison is invited to the

1. We take judicial notice that Lisa Aversa Richette has been serving as judge of the Court of Common Pleas of Philadelphia County, Pennsylvania, since December 30, 1971. Judge Richette was trial counsel and was on the original brief in this court. Appellants are now represented in this court by other counsel.

facts of Golden v. Zwickler, *supra,* the appeal following the remand to the district court ordered in Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). Zwickler was a printer who had published certain handbills relating to the re-election campaign of Congressman Multer in the congressional elections of 1964. The complaint alleged that Multer would again be a candidate in 1966. At issue was the validity of a New York statute requiring that there be printed on political handbills the identity of those responsible for their publication. Subsequent to the original appeal in Zwickler v. Koota, Congressman Multer left the House.of Representatives and was elected to a fourteen-year term on the New York Supreme Court. The district court held that election to the judicial post did not seem "to moot the controversy and thus to abort a declaration of constitutional invalidity," holding that at the time the action was filed a ripe controversy was presented. A unanimous Supreme Court reversed, holding that "Zwickler did not establish the existence at the time of the hearing on the remand of the elements governing the issuance of a declaratory judgment." 394 U.S. at 110, 89 S.Ct. at 960.

The Court said: " '[T]he federal courts established pursuant to Article III of the Constitution do not render advisory opinions. For adjudication of constitutional issues, "concrete legal is-

sues, presented in actual cases, not abstractions," are requisite. This is as true of declaratory judgments as any other field.' United Public Workers of America v. Mitchell, 330 U.S. 75, 89, 67 S.Ct. 556, 91 L.Ed. 754 (1947)." 394 U.S. at 108, 89 S.Ct. at 959.[2]

■ Because Judge Richette lacks the capacity to participate in the requested relief as counsel, the matter *sub judice* becomes simply a request for an advisory opinion. "[T]he oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions." Wright, Federal Courts, § 12 at 37.

## II.

■ It may be contended that Judge Richette's present judicial status, although precluding her functioning as a lawyer, does not prevent her from serving as the next friend of the minors. Assuming that such activity is permitted by the restrictions of the Pennsylvania Constitution, this factor would not in itself alter our decision. The threshold issue still is one of state law which has not been fully presented to the state courts. Indeed, in our view, irrespective of the mootness question, there must be a resolution of preliminary state law questions by the state courts as a necessary prerequisite to acquisition of federal jurisdiction over the constitutional question.

2. The Court continued:
   "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

We think that under all the circumstances of the case the fact that it was most unlikely that the Congressman would again be a candidate for Congress precluded a finding that there was "sufficient immediacy and reality" here.
. . .
   It was not enough to say, as did the District Court, that nevertheless Zwickler has a "further and far broader right to a general adjudication of unconstitutionality . . . [in] [h]is own interest as well as that of others who would with like anonymity practise free speech in a political environment. . . ." The constitutional question, First Amendment or otherwise, must be presented in the context of a specific live grievance.
394 U.S. at 108–110, 89 S.Ct. 956 at 960.

## A.

Although appellants argue that no Pennsylvania rule or statute permits the representation of "mature children" in a custody proceeding, they did not avail themselves of many provisions of the Pennsylvania Rules of Civil Procedure governing minors and intervenors. Mrs. Richette entered an ex parte appearance as "next friend" without utilizing the intervention provisions of Pa.R.Civ.P. 2326 et seq. 12 P.S.Appendix. Although Pa.R.Civ.P. 2031(a) provides that a minor plaintiff may select his guardian, "such selection shall not bar the court from removing the guardian for cause in accordance with these rules." See Haines v. Fitzgerald, 108 Pa.Super. 290, 165 A. 52 (1933). Indeed, Rule 2033(a) provides: "A person who is entitled to apply for the appointment of a guardian for a minor may petition the court for a rule to show cause why the guardian representing the minor in an action should not be removed and another guardian be substituted." Rules 2031 and 2034 set forth the procedure for the selection and appointment of guardians and objections thereto.

The ex parte appearance for the children also by-passed the detailed intervention procedure outlined in Pa.R.Civ.P. 2327(4), permitting intervention of persons not parties to an action when "the determination of such action may affect any legally enforceable interest of such person. . . ." The Pennsylvania advisory committee's note to this rule states: "The interest justifying intervention must be a right or liability recognized and enforceable at law or in equity as distinguished from an economic motive or interest in seeing one litigant or another prevail in the proceedings" [citing Pennsylvania cases]. Rule 2328 outlines the procedure for intervention and requires the filing of a petition and service; Rule 2329 provides for a hearing on the petition for intervention after notice. *Cf.*, federal practice governing intervention, F.R.Civ.P. 24 and 5. Pennsylvania Rule 2326 provides that the intervention procedure applies to any "civil action or proceeding at law or in equity brought in or appealed to any court of record which is subject to these rules."

The Divorce Code of Pennsylvania confers jurisdiction on the Municipal Court of Philadelphia over matters pertaining to "custody or visitation rights" of children. 23 Pa.Stat.Anno. § 15, subd. 3(d). (The name of this court was changed to the County Court of Philadelphia in 1961. 17 Pa.Stat.Anno. § 705. The jurisdiction of that court has now been assumed by the Family Division of the Court of Common Pleas. Pa. Const. Art. 5, Schedule, § 16(q)(i).) It is provided by statute that Courts of Common Pleas may determine in one action the future care, custody, and visitation rights as to children of the marriage, and "[a]ny other matters pertaining to such marriage and divorce or annulment authorized by law and which fairly and expeditiously may be determined and disposed of in such action." 23 Pa.Stat.Anno. § 15, subd. 1(b) & (e). Furthermore, the rules governing divorce and annulment provide that any matters which by statute may be joined with an action for divorce and annulment may be set forth in the same complaint. Rule 1127. The Pennsylvania Rules of Civil Procedure, 1121–1137, govern the action of divorce, and provide that except as otherwise provided, the procedure in divorce actions "shall be in accordance with the rules relating to the action of assumpsit." Rule 1121(b). A similar provision is contained in Equity Rule 1501.

It is arguable, therefore, that the Pennsylvania rules for intervention are applicable to child custody proceedings, whether viewed as an action in law, to wit, as ancillary to divorce, Rules 1121 et seq., or as an action in equity, Rules 1501 et seq. In any event the initial determination of the applicability of the appropriate Pennsylvania procedural rules is properly a matter for the state's courts. Therefore, because appellants

did not attempt to avail themselves of the intervention procedure under Pa.R. Civ.P. 2326–2330, we are unwilling to accept their allegation that no Pennsylvania procedural avenue is open to them.

### B.

■ In addition to recognizing that appellants failed to observe procedural rules of the state to achieve intervention and self-styled next friend or guardian status, we experience difficulty in accepting appellants' designation that the Magaziner children were "mature children," and thereby entitled, without more, to select their guardian and next friend and their own counsel in a proceeding to which they are not parties. As we have previously noted, the children were ages 15, 12, and 10 at the time of the entry of appearance. We do not understand the legal connotations of the description "mature children," nor is it necessary for us to do so in the present posture of this case. At the very least, if the status of "mature children" confers rights and privileges not possessed by ordinary minors under Pennsylvania law, determination of this issue is a subject for adjudication by that state's judiciary and not for initial determination by the federal courts.

Recourse to Mr. Justice Frankfurter's observations in Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 498, 61 S.Ct. 643, 644, 85 L.Ed. 971 (1941), is especially appropriate: "The complaint . . . undoubtedly tendered a substantial constitutional issue. It is more than substantial. It touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open. Such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy."

In its most recent pronouncement on abstention, Lake Carriers' Ass'n v. Mac-Mullan, 406 U.S. 498, 92 S.Ct. 1749, 1759, 32 L.Ed.2d 257 (1972), the Supreme Court ordered a *Pullman*-type abstention (retaining jurisdiction until the state courts acted): "The paradigm case for abstention arises when the challenged state statute is susceptible of 'a construction by the state courts that would avoid or modify the [federal] constitutional question. Harrison v. NAACP, 360 U.S. 167 [79 S.Ct. 1025, 3 L.Ed.2d 1152.] Compare Baggett v. Bullitt, 377 U.S. 360 [84 S.Ct. 1316, 12 L.Ed.2d 377]. Zwickler v. Koota, *supra*, 389 U.S. 241 at 249 [88 S.Ct. 391 at 396]. More fully, we have explained:

" 'Where resolution of the federal constitutional question is dependent upon, or may be materially altered by, the determination of an uncertain issue of state law, abstention may be proper in order to avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication. . . . The doctrine . . . contemplates that deference to state court adjudication only be made where the issue of state law is uncertain.' Harman v. Forssenius, 380 U.S. 528, 534 [85 S.Ct. 1177, 1182, 14 L.Ed.2d 50, 406 U.S. at 510–511, 92 S.Ct. at 1757] (1965)."

That is precisely the situation presented here. We have rehearsed in detail the procedural avenues which at least appear to provide courtroom access to the appellants, despite their allegations to the contrary. Moreover, Pennsylvania law also authorizes the use of the writ of habeas corpus to test child custody rights. Standard Pennsylvania Practice, § 50 Infants. In Commonwealth ex rel. Ebel v. King, 162 Pa.Super. 533, 58 A.2d 484 (1948), the court suggested that children could have status as petitioners and, therefore, as parties, in a child custody proceeding brought, not as here, under 23 Pa.Stat. Anno. § 15, subd. 3 (c), but under the Great Writ.

We conclude, therefore, that the issues of state law are unresolved, and that

these important preliminary issues must be decided by the state courts before a federal court can be hospitable to appellants' allegations that a single Pennsylvania state court judge deprived them of rights secured by the federal constitution.

## III.

■ Alternatively, if we approach the concept of abstention from the strictures of Zwickler v. Koota, *supra*, 389 U.S. at 248, 88 S.Ct. 391, suggesting that the judge-made doctrine of abstention sanctions escape from immediate federal decision only in narrowly limited "special circumstances," we nevertheless find those circumstances present here—a state domestic relations case. Traditionally, it has been the policy of federal courts to avoid assumption of jurisdiction in this species of litigation. "The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states and not to the laws of the United States." In re Burrus, 136 U.S. 586, 593–594, 10 S.Ct. 850, 853, 34 L.Ed. 500 (1890).[3] Indeed, this court has explicitly held there is no federal diversity jurisdiction in a domestic relations case involving a child. Albanese v. Richter, 161 F.2d 688 (3d Cir. 1947).

"As a matter of policy and comity, [child support cases are] local problems [which] should be decided in state courts. Domestic relations is a field peculiarly suited to state regulation and control, and peculiarly unsuited to control by federal courts." Buechold v. Ortiz, 401 F.2d 371, 373 (9th Cir. 1968). For other cases to the same effect, see 1 Barron and Holtzoff, (Wright Ed.) §

40.1 n.36.11. Thus, putting aside equal protection considerations, Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), not present here, the federal courts, and especially this circuit, have steered a course away from domestic relations cases.[4]

In recent months, this court has invoked the doctrine of abstention even in a diversity case, because of deference to the expertise of the Orphans Court of Pennsylvania, recognizing "the special ability of the state court to decide those issues in view of its exclusive state jurisdiction over trusts and estates." Reichman v. Pittsburgh National Bank, 465 F.2d 16, 18 (3d Cir., 1972. Similarly, in Allegheny Airlines v. Pennsylvania Public Utility Commission, 465 F.2d 237 (3d Cir., 1972), abstention was allowed, not only because of the teachings of Alabama Public Service Commission v. Southern R. Co., 341 U.S. 341, 71 S. Ct. 762, 95 L.Ed. 1002 (1951), and Burford v. Sun Oil Co., 319 U.S. 315, 63 S. Ct. 1098, 87 L.Ed 1424 (1943), but because we found the presence of significant state concerns and the absence of corresponding federal concerns. This consideration has been the philosophical underpinning of the reluctance of federal courts to intrude upon domestic relations problems, traditionally governed by the domestic policies of the several states. Professor Wright observes that the domestic relations and probate exceptions, see Reichman v. Pittsburgh National Bank, *supra*, to federal jurisdiction, may "rationally be defended on the ground that these are areas of the law in which the states have an especially strong interest and a well-developed competence for dealing with them." Wright, Federal Courts, § 25 at 84.

3. Professors Hart and Wechsler have commented: "The *Burrus* case actually involved only the question of the power of a United States district court, under the *habeas corpus* statutes, to make an award of an infant's custody in the absence of diversity of citizenship jurisdiction. The question of power, given such jurisdiction and the requisite jurisdictional amount, was expressly reserved (136 U.S. at 597,

[10 S.Ct. 850]). But the quoted dictum nevertheless has been taken as referring to judicial competence as well as legislative." The Federal Courts and the Federal System, 1016–1017.

4. Except those emanating from the Virgin Islands where our scope of review extends to that of a territorial appellate court as well as a federal court of appeals.

Because of our finding of mootness, the unsettled state of Pennsylvania law in this area, and the re-affirmation of our policy of non-intrusion by federal courts in domestic relations problems, we agree that dismissal of the complaint was proper.

The judgment of the district court will be affirmed.[5]

5. When this appeal was initially presented to this panel, we affirmed the dismissal of the complaint solely on the basis that appellee enjoyed judicial immunity. See Bauers v. Heisel, 361 F.2d 581 (3d Cir. 1966). In the view we now take, it does not become necessary to decide whether the *Bauers* doctrine applies to actions other than those claiming money damages.