Samuel T. ROY, Justice of the Peace, et al., Appellants,

v.

Benjamin R. JONES, Chief Justice of the Supreme Court of Pennsylvania, et al., Appellees.

No. 72-1737.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6).

May 22, 1973.

Decided Aug. 28, 1973.

Stuart E. Savage, Karl W. Wiedt, III, Savage, Finkel & Love, Pittsburgh, Pa., for appellants.

Frederick N. Frank, Asst. Atty. Gen., Pittsburgh, Pa., J. Shane Creamer, Atty. Gen., Harrisburg, for appellees.

Before KALODNER, ALDISERT and ADAMS, Circuit Judge.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

Appellants are justices of the peace who were elected, and commissioned by the Governor of Pennsylvania, for a six-year term of office expiring on the first Monday of January, 1974. On May 19, 1971, they were temporarily suspended from office by the Supreme Court of Pennsylvania acting upon the recommendation of the Judicial Inquiry and Review Board.[1] The apparent cause for the temporary suspensions was an alleged violation by appellants of Rule 2, subd. A of The Rules of Conduct, Office Standards and Civil Procedure for Justices of the Peace, which prohibits justices of the peace from, *inter alia*, being employed by the Commonwealth or a political subdivision or holding office in a political party or political organization.[2]

On June 1, 1971, appellants, together, with the Squires and Constables Association of Pennsylvania and other suspended justices of the peace, petitioned the Pennsylvania Supreme Court to revoke the suspension orders of May 19, 1971. This petition was denied by order of court dated July 14, 1971. Later, on August 23, 1971, the same group applied to Justice Brennan of the United States Supreme Court for a stay of the May 19th suspension orders pending the filing of a petition for a writ of certiorari with the United States Supreme Court. Justice Brennan denied the application for a stay on September 19, 1971, and no petition for a writ of certiorari was ever filed seeking appellate review of the Pennsylvania Supreme Court's May 19th orders and its refusal to revoke its suspension orders.

Instead, appellants commenced this original action in the district court on December 30, 1971, alleging that their suspensions were effected without notice and without a hearing in violation of both the Commonwealth's "Rules of Procedure Governing the Judicial Inquiry and Review Board" and the United States Constitution.[3] They urged the district court (1) to enjoin enforcement of the Pennsylvania Supreme Court's suspension order, and (2) to enjoin the Judicial Inquiry and Review Board from conducting hearings and making further recommendations to the Pennsylvania

---

1. The 1968 Constitution directs the establishment of the Board which is given the exclusive power to investigate alleged judicial misconduct and to recommend disciplinary action to the Supreme Court. Pa.Const. Art. V, § 18, P.S.

2. At the time of appellants' election to office, justices of the peace were not prohibited from working for the Commonwealth or holding office in a political party. In 1968, however, the Pennsylvania Constitution was amended, and the Rules of Conduct, Office Standards and Civil Procedure for Justices of the Peace were promulgated by the Pennsylvania Supreme Court. In Petition of Squires and Constables of Pennsylvania, Inc., 442 Pa. 502, 275 A.2d 657 (1971), the Supreme Court of Pennsylvania upheld the validity of the Rules.

3. This action was brought under 42 U.S.C. § 1983, and jurisdiction was based on 28 U.S. C. §§ 1331, 1343.

Supreme Court.[4] In an opinion and order dated June 16, 1972, the district court, based on "abstention" principles, granted the defendants' motion to dismiss the suit. 349 F.Supp. 315.

Although we affirm the judgment of the district court, we do so on a ground other than that relied upon by the district court.[5]

## I.

■ It is clear from a recitation of the facts of this case that the appellants have sought, through the vehicle of a section 1983 suit for injunctive relief, to have a lower federal court engage in what essentially constitutes relitigation of issues already decided by Pennsylvania's highest court. Having failed to pursue the only available course for federal review of the state court's determination—a writ of certiorari from the Supreme Court of the United States—the appellants are now barred by the principles of *res judicata* from obtaining such review in the lower federal courts.[6]

Guided by the decision in Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947), the federal courts have held that litigants may not seek to have redetermined, by original actions in federal district courts, issues already settled in a prior state-court adjudication.[7] Illustrative of the prevailing view, and similar to the present case, is Coogan v. Cincinnati Bar Assoc.[8]

Coogan, an attorney, was indefinitely suspended as a result of a recommendation of the Board of Commissioners on Grievances and Discipline and the Cincinnati Bar Association. The Supreme Court of Ohio approved the findings and recommendations of the Board, and issued the suspension order. Coogan failed to seek certiorari from the United States Supreme Court for review of the Ohio court's action. Instead, he brought an original action under the Civil Rights Act.[9] in the federal district court, seeking to enjoin enforcement of the suspension. He claimed that his suspension contravened certain constitutional guarantees.

The district court dismissed the action and the Sixth Circuit affirmed. In so doing, it offered a succinct statement of the relevant principles:

"Coogan had an adequate remedy for review of his suspension by petitioning the Supreme Court of the United States for a writ of certiorari. He chose not to resort to that remedy.

"The Civil Rights Act was not designed to be used as a substitute for the right of appeal, or to collaterally attack a final judgment of the highest court of a state and relitigate the issues which it decided.

"The final judgment of the Supreme Court is conclusive and Coogan is precluded by the doctrine of res judicata from relitigating not only the issues which were actually involved in the disbarment proceeding, but also the issues which he might have presented."[10]

As noted above, on June 1, 1971, appellants petitioned the Supreme Court of Pennsylvania to revoke the suspension orders of May 19, 1971. In addition to

---

4. Subsequent to their suspensions, appellants were formally notified of the institution of formal charges against them. They answered the charges, and a hearing before the Board was scheduled prior to the initiation of the present case.

5. *See* Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224 (1937).

6. As indicated above, appellants sought a stay from the U.S. Supreme Court of the suspension order. It was denied, and no petition for certiorari was filed.

7. *See, e. g.*, Bricker v. Crane, 468 F.2d 1228, 1232 (1st Cir. 1972); P. I. Enterprises, Inc. v. Cataldo, 457 F.2d 1012, 1014 (1st Cir. 1972); Booth v. Lemont Mfg. Corp., 440 F.2d 385, 388 (7th Cir. 1971); Woolley v. Eastern Air Lines, Inc., 273 F.2d 615, 616 (5th Cir. 1960); Mertes v. Mertes, 350 F.Supp. 472, 474 (D.Del.1972) (3 judge court).

8. 431 F.2d 1209 (6th Cir. 1970).

9. 42 U.S.C. § 1983.

10. 431 F.2d at 1211.

contentions based upon state law, the petition contains specific arguments that the suspension order violated the appellants' *federal* constitutional rights. In denying the petition, Pennsylvania's highest court necessarily rendered a decision rejecting on the merits the very federal claims asserted by appellants in their complaint filed in the district court. Having been content to forego the prescribed avenue for securing federal review—application for a writ of certiorari—the appellants are now barred from bringing what is, effectively, a collateral attack upon the state court's judgment. Accordingly, the district court's dismissal of this action must be affirmed.[11]

## II.

The district court based its decision on "abstention" principles. There are several legal doctrines that have, at times, been employed under the "abstention" rubric.[12] Thus, the classical abstention principle, or Pullman doctrine,[13] and the equitable concepts embodied in the *Younger* rule[14] address different,

11. There is a line of authority springing from the decision of the Supreme Court in Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), which holds that a federal district court is without *jurisdiction* to redetermine issues already litigated in a prior state action. Apparently, the Supreme Court felt that allowing relitigation in the district courts of issues once adjudicated in the state courts would amount to a usurpation of the Supreme Court's exclusive power to review state determinations of federal questions. Thus the Court stated (263 U.S. at 415–416, 44 S.Ct. at 150):

"It affirmatively appears from the bill that the judgment was rendered in a cause wherein the circuit court had jurisdiction of both the subject matter and the parties; that a full hearing was had therein; that the judgment was responsive to the issues, and that it was affirmed by the Supreme Court of the State on an appeal by the plaintiffs. If the constitutional questions stated in the bill actually arose in the cause, it was the province and duty of the state courts to decide them; and their decision whether right or wrong, was an exercise of jurisdiction. If the decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding. Unless and until so reversed or modified, it would be an effective and conclusive adjudication. [citing cases]

"Under the legislation of Congress, no court of the United States other than this Court could entertain a proceeding to reverse or modify the judgment for errors of that character. [citing statute] To do so would be an exercise of appellate jurisdiction. The jurisdiction possessed by the District Courts is strictly original."

. . .

In Daniel B. Frazier Co. v. Long Beach Twp., 77 F.2d 764, 765 (3d Cir. 1935), this court, by application of the *Rooker* principle, reached substantially the same result that we by resort to the doctrine of *res judicata* reach here. Other courts have also taken the *Rooker* approach. See, e. g., Paul v. Dade County, 419 F.2d 10, 12–13 (5th Cir. 1969), cert. denied, 397 U.S. 1065, 90 S.Ct. 1504, 25 L.Ed.2d 686 (1970); Mackay v. Nesbitt, 412 F.2d 846 (9th Cir.), cert. denied, 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425 (1969).

12. See Conover v. Montemuro, 477 F.2d 1073, 1086 (3d Cir. 1972) (Adams, J., concurring) aff'd en banc, (3d Cir. 1973).

13. Railroad Comm. of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). *"Pullman"* abstention involves, typically, deference by a federal court to state-court determinations of state law, with a view to obviating the need to reach questions of constitutional dimension. Several cases, however, have upheld abstention by the federal courts where federal jurisdiction was based entirely on diversity of citizenship, and where there thus existed no constitutional question to be avoided. See, e. g., Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959); Hawks v. Hamill, 288 U.S. 52, 53 S.Ct. 240, 77 L.Ed. 610 (1933).

In other cases the Supreme Court has ordered abstention where a state has provided a special review mechanism for the determination of questions of state administrative law. See, e. g., Alabama Public Service Comm. v. Southern Ry., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951); Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

These cases are, at least arguably, grounded in considerations somewhat distinct from those which underlie the *Pullman* doctrine.

14. Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

though similar, concerns. Whichever abstention doctrine is applicable, however, its invocation serves as an impediment to a decision on the merits.

▇ In the present case, the district court stated that "plaintiffs have not suffered or are likely to suffer irreparable injury." As indicated earlier,[15] a hearing before the Judicial Inquiry and Review Board has been scheduled. To the extent that this hearing may be considered a continuing proceeding, the philosophy underlying *Younger* would counsel that the federal court stay its hand. Of course, if there were no continuing procedure,[16] the doctrine of *Younger* has no application.[17]

Moreover, the Supreme Court of Pennsylvania having already construed the statute in question, *Pullman* abstention would not be apposite.

### III.

Our attention has been invited to England v. Louisiana State Board of Medical Examiners,[18] which provides an interesting comparison with the present case. In approaching *England*, it must be noted that the plaintiffs here chose to bring their action originally in state court. And, although *England* lends philosophical support to the result reached by us here, it embodies somewhat different legal issues and rests upon somewhat different doctrinal underpinnings.

In *England*, a group of chiropractors brought suit in the first instance in the federal court, seeking an injunction and a declaration that, as applied to them, the Louisiana Medical Practice Act violated the fourteenth amendment. The district court invoked the doctrine of abstention, as set forth in *Pullman, supra,* on the ground that a state court might effectively end the controversy by determining that chiropractors were not governed by the state statute. Having thus been remitted to the state courts, the chiropractors there "submitted for decision, and briefed and argued"[19] both their state and federal claims. These were rejected by the state courts. Thereafter, the chiropractors returned to the district court and sought to raise the same federal claims that had been turned down in the state court. The district court dismissed the federal action, holding that:

"Since the [state] courts have passed on all issues raised, including the claims of deprivation under the Federal Constitution, this court, having no power to review those proceedings, must dismiss the complaint. The proper remedy was by appeal to the Supreme Court of the United States." [20]

On appeal, the Supreme Court held that a litigant may avoid the result reached by the district court by "reserving" his federal contentions during the course of the state litigation.

It is apparent that the procedures outlined in *England* were engrafted onto the law of abstention to insure that implementation of the *Pullman* doctrine not run afoul of Congressional mandate. In Willcox v. Consolidated Gas Co., 212 U.S. 19, 29 S.Ct. 192, 53 L.Ed. 382 (1909), the Supreme Court stated unequivocally that "the right of a party plaintiff to choose a federal court where there is a choice cannot be properly denied." [21] Recalling its earlier pro-

---

15. *See* note 4, *supra.*

16. *See* Lewis v. Kugler, 446 F.2d 1343, 1347 (3d Cir. 1971) ("They [the principles of *Younger*] are not applicable to situations where no prosecution is pending in state courts at the time a federal proceeding is begun. . . .").

17. The considerations which appear to have motivated the Court in *Younger* emanated, to a great extent, from the desire to prevent federal interference with state *criminal* proceedings. See the concurring opinion of Mr. Justice Stewart, 401 U.S. at 55, 91 S. Ct. 746.

18. 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

19. *Id.* at 413, 84 S.Ct. at 463.

20. *Id.* at 414, 84 S.Ct. at 464.

21. 212 U.S. at 40, 29 S.Ct. at 195.

nouncement, and mindful of the fact that remitting to state courts litigants who have properly invoked the statutory jurisdiction of the federal courts might be deemed an "abdication" of legislated responsibility,[22] the Court in *England* fashioned the procedure for "reservation" of federal jurisdiction. The litigant who finds himself ordered into the state court against his will may specifically "reserve" presentation of his federal claims to the federal court pending state determination of his state-law claims. Upon resolution of the state questions, he is admitted back into federal court for disposition of any federal issues that remain.[23] Thus, where *Pullman* abstention is ordered, there is avoided

> "any conclusion that a litigant who has properly invoked the jurisdiction of a Federal District Court to consider federal constitutional claims can be compelled, without his consent and through no fault of his own, to accept a state court's determination of those claims."[24]

▆ Inasmuch as the genesis of *England* was the perceived need to insulate the *Pullman* doctrine from the taint of "abdication," its application in a case where no *Pullman* problem is present is questionable. It would appear the power to "reserve" federal claims when proceeding in a state court can arise *only*

when a plaintiff is before the state tribunal because the federal court has refused, on abstention grounds, to proceed with his case.[25] The plaintiffs here *elected* to proceed first in the state courts, and thus waived the opportunity to "reserve" their federal claims. Having selected the state forum of their own accord, they msut abide by their choice.

The judgment of the district court will be affirmed.

ALDISERT, Circuit Judge, (concurring).

I concur in the result reached by the majority, but I do not join in the opinion. The district court dismissed the complaint on abstention principles. The majority affirms on *res judicata*, what they describe as "a ground other than that relied upon by the district court." I am not persuaded that the abstention doctrine, relied upon by the district court, is divorced from *res judicata*.

Abstention is a judicially developed doctrine limiting district court action under certain circumstances. I perceive it to be a shorthand expression encompassing several aspects of federal restraint. (1) In a *Pullman*-type abstention,[1] the Court stays its hand and retains jurisdiction until the state court acts. (2) In a *Burford*-type abstention,[2] the Court dismisses the

---

22. 375 U.S. at 415–416, 84 S.Ct. 461.

23. *Id.* at 421–422, 84 S.Ct. 461.

24. *Id.* at 415, 84 S.Ct. at 464.

25. Describing the *England*-type litigant as having a "right to return" to the district court strongly implies that the Supreme Court was referring in *England* only to cases where a litigant, because of the absention doctrine, has been sent by the federal courts to the state courts against his will. 375 U. S. at 422, 84 S.Ct. 461.

1. Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). *See also* Lake Carriers' Association v. MacMullan, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972); Askew v. Hargrave, 401 U.S. 476, 91 S.Ct. 856, 28 L. Ed.2d 196 (1971); Fornaris v. Ridge Tool Co., 400 U.S. 41, 91 S.Ct. 156, 27 L.Ed.2d

174 (1970); Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); United Gas Pipe Line Co. v. Ideal Cement Co., 369 U.S. 134, 82 S.Ct. 676, 7 L.Ed.2d 623 (1962); Clay v. Sun Insurance Office Ltd., 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170 (1960); City of Meridian v. Southern Bell Tel. and Tel. Co., 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed.2d 562 (1959); Albertson v. Millard, Attorney General of Michigan, 345 U.S. 242, 73 S.Ct. 600, 97 L.Ed. 983 (1953); Spector Motor Co. v. McLaughlin, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101 (1944).

2. Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). *See also* Alabama Public Service Commission v. Southern R. Co., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951); Magaziner v. Montemuro, 468 F.2d 782 (3d Cir. 1972); Reichman v. Pittsburgh National Bank, 465 F.2d

complaint and flatly declares that the subject matter is for state court determination. (3) An *England*-type abstention envisions two stages.[3] Where the case is filed in federal court before a state court decision, a *Pullman*-type abstention comes into being, the federal court staying its hand until the state court acts. If, after the state proceedings terminate, the plaintiff returns, the federal court must make a factual determination. It must decide whether the federal questions were presented to the state court. If they were, and were not reserved, then, on the theory of *res judicata,* the court may properly dismiss the federal action. It is this second stage which gives the label *"England*-type" to this category of abstention; the first stage is purely and simply a *Pullman*-type abstention.

In the case before us, we had only the second stage. The appellants came to the federal court after the state court proceedings. There was thus no need for a first stage *Pullman*-type abstention. Call it *England*-type abstention or garden variety *res judicata,*[4] it is the same to me.

I do not believe it is necessary to cut terminology so fine as to suggest that *England* only applies where the filing of the federal action precedes the state action. I find no magic in the "right to return" expression in the opinion. The essence of the doctrine is as stated by Mr. Justice Brennan: "[W]e see no reason why a party, after unreservedly litigating his federal claims in the state courts although not required to do so, should be allowed to ignore the adverse state decision and start all over again in

the District Court." 375 U.S. at 419, 84 S.Ct. at 466. See Commonwealth ex rel. Specter v. Levin, 359 F.Supp. 12 (E.D. Pa., three-judge court, 1973).

Abstention takes even other forms. Professor Charles Alan Wright lists the Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), sextet as one of "The Abstention Doctrines."[5] The editors of Hart and Wechsler's Federal Courts and the Federal System, 2d Ed., prefer a general category of "Judicially Developed Limitations on Entertaining Actions Against State Officers"[6] in which they include "B. Abstention: The Pullman Doctrine"[7] and "C. Equitable Restraint: The Doctrine of Douglas v. City of Jeanette."[8] It is under "equitable restraint" rather than "abstention" that they place *Younger.*[9] Mechanical dependence upon labels leads to difficulties. The separate nomenclature used by America's foremost federal court commentators emphasizes the importance of the conceptual and factual underpinnings of a case rather than reliance upon a neat label attached to its holding.

Although the majority's discussion of *Younger* appears to be dictum, I find it necessary to add these observations. *Younger* held that federal courts will not entertain an action to restrain an ongoing state proceeding if the federal plaintiff has the opportunity of asserting his constitutional contentions in a single state action. I perceive nothing in this notion that limits the application of the conceptual basis of *Younger* to criminal cases. In Berryhill v. Gibson, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), the Supreme Court had an un-

16, 18 (3d Cir. 1972); Allegheny Airlines, Inc. v. Pennsylvania Public Utility Commission, 465 F.2d 237 (3d Cir. 1972). *Cf.* ALI Study of the Division of Jurisdiction Between State and Federal Courts, § 1371(d); § 1371(d) of S. 1876, 93d Congress, 1st Session, proposed Federal Court Jurisdiction Act of 1973.

3. England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

4. Commissioner v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948).

5. C. Wright, Law of Federal Courts, 1972 Pocket Part, 23.

6. At 980.

7. At 985.

8. At 1009.

9. At 1021.

cluttered opportunity to say that the rationale of *Younger* was inapplicable to civil actions. But this, the court did not do.

I have found Lynch v. Snepp, 472 F.2d 769, 773 (4th Cir. 1973), to be the most scholarly discussion of this point. There, the Fourth Circuit, speaking through Judge Craven, applied *Younger* to a state civil action arising from a school disturbance:

> These general notions of comity, equity, and federalism, applied since the early days of our Union of States and most recently restated in *Younger* and its companion cases, occupy a highly important place in our history and our future. Their application should never be made to turn on such labels as "civil" or "criminal" but rather upon an analysis of the competing interests in each case. Palaio v. McAuliffe, 466 F.2d 1230, 1232–1233 (5th Cir. 1972); Cousins v. Wigoda, 463 F.2d 603 (7th Cir.) application for stay denied, 409 U.S. 1201, 92 S.Ct. 2610, 34 L.Ed.2d 15 (1972) (Rehnquist, Circuit Justice).

A fair reading of the district court's opinion in the case before us discloses that Judge Scalera approached the problem much the same as Judge Craven in *Snepp*. Judge Scalera emphasized the "irreparable injury" test, citing De Vita v. Sills, 422 F.2d 1172 (3d Cir. 1970); *Younger* said that irreparable injury must be "both immediate and great." 401 U.S. at 46, 91 S.Ct. 746 *Snepp* reversed the grant of a preliminary injunction because plaintiffs "failed to show great and immediate irreparable injury [and] that their rights would not be protected in the state proceedings. . . . " 472 F.2d at 776.

The fundamental equitable concepts of *Younger* must never be subordinated.

Thus, one piece of the *Younger* factual complex must not become the subject of controlling emphasis to the exclusion of the important legal principles constituting the rationale of the case. An example of this is the suggestion that the root premises of *Younger* do not lie where there is no ongoing state proceeding. While the contemporaneity of the state action may indeed be extremely important, this is but one factor, and this one factor must not be considered *in vacuo*.

*Younger* is a jurisprudential brew of many interdependent principles and traditions, which Judge Craven described as "general notions of comity, equity, and federalism applied since the early days of our Union of States." And I find it difficult if not impossible, to lift one particular ingredient from the brew and then isolate it. And if I could, I dare say it would be impossible to divest it from the flavor of the other ingredients. Thus, if the presence of an ongoing state proceeding is critical, so is the necessity of proving entitlement to an immediate injunction. So understood, there is a delightful Catch-22 quality about it all:

> Plaintiff: Aha, you can't apply *Younger*, because there is no ongoing state proceeding.

> Defendant: Aha to you, sir. If there is no ongoing state proceeding, then why do you need an injunction? What's there to enjoin?

On balance, while I agree that perhaps the neatest way of affirming the district court is via the *England-res judicata* route, I am also prepared to affirm Judge Scalera on the strength of his "irreparable harm" discussion.