LIBERTY CURTIN CONCERNED PARENTS and Sugar Valley Concerned Citizens, Plaintiffs,

v.

KEYSTONE CENTRAL SCHOOL DISTRICT et al., Defendants.

Civ. No. 78–780.

United States District Court, M. D. Pennsylvania.

Dec. 29, 1978.

As Amended Feb. 2, 1979.

Clifford A. Rieders, Stuart, Murphy, Smith, Mussina, Harris & Rieders, Williamsport, Pa., for plaintiffs.

Donald L. Faulkner, Lock Haven, Pa., for defendants.

## OPINION

MUIR, District Judge.

The Plaintiffs, Liberty Curtin Concerned Parents and Sugar Valley Concerned Citizens, both unincorporated associations, filed this action against the Keystone Central School District and the School Directors alleging that the Defendants deprived them of their constitutional rights. A hearing on the issue of whether the Plaintiffs were entitled to a temporary restraining order or preliminary injunctive relief was held be-

fore the undersigned judge on August 22, 1978 and in an opinion and order dated August 25, 1978, the Court denied the Plaintiffs' request for relief. That Order has been appealed to the United States Court of Appeals for the Third Circuit. Currently pending before the Court are five motions and additional briefing on an issue raised by the Court *sua sponte.* The Court will give only a brief procedural history of the case in this introduction and will give the procedural history of each motion as that motion is being considered. Briefly, the parties filed cross-motions for summary judgment in September of 1978. With respect to the Plaintiffs' motion for summary judgment, the Defendants filed a motion to strike affidavits filed in support thereof in October of 1978. Following the completion of briefing on the summary judgment motions and the motion to strike affidavits, the Court received a copy of an order entered in the Court of Common Pleas of Clinton County, Pennsylvania relating to issues which are also raised in this case. Consequently, on October 31, 1978, the Court directed the parties to brief more extensively the question of whether this Court should abstain from proceedings in this case and remove the case from the November, 1978 trial list during which month a hearing on the question of permanent injunctive relief had been scheduled. The next day, the Plaintiffs filed a motion for reconsideration of that Order. Briefing on that motion and on the abstention issue was completed in late November. The Plaintiffs then filed a motion to strike the Defendants' brief in support of abstention and briefing on that motion became complete following receipt of a letter from counsel for the Plaintiff on December 11, 1978 waiving his right to file a reply brief. It is the view of the Court that the merits of the motion for summary judgment should not be reached until the Court has considered the question of whether it should abstain. If the Court decides that question favorably to the Defendants, there would be no need either to rule on the motions for summary judgment or to rule on the Defendants' motion to strike documents sub-

mitted by the Plaintiffs in support of their motion. Additionally, however, the Court must rule on the motion for reconsideration of its order of October 31, 1978 before reaching the merits of the abstention question. Should the Court decide that motion favorably to the Plaintiffs, there would be no need to rule on the abstention question or on the merits of the Plaintiffs' motion to strike Defendants' brief in support of abstention. The logical order for considering the issues before the Court is as follows: (1) Plaintiffs' motion for reconsideration; (2) Plaintiffs' motion to strike Defendants' brief in support of abstention; (3) the abstention issue raised by the Court *sua sponte*; (4) Defendants' motion to strike affidavits filed in support of Plaintiffs' motion for summary judgment; (5) and (6) the cross-motions for summary judgment.

On October 31, 1978, following receipt of an order issued in In the Matter of the Apportionment of Regions for the Keystone Central School District, No. 20 July Term 1978, Court of Common Pleas of Clinton County, Pennsylvania, which indicated that on August 16, 1978, 6 days after this case was started, the School District had filed a petition for apportionment pursuant to Pennsylvania law and that the Clinton County Court of Common Pleas had directed the submission of a reapportionment plan relating to the school election regions on or before December 8, 1978, the Court removed this case from its November, 1978 trial list and directed the parties to submit briefing relating to the question of abstention. The Plaintiffs filed a motion for reconsideration of that order on November 1, 1978 accompanied by a brief. On November 6, 1978, the Court issued an order setting an accelerated briefing schedule on the motion. Pursuant to that Order, the Defendants filed a brief in opposition to the Plaintiffs' motion on November 13, 1978 and the Plaintiffs filed a reply brief on November 15, 1978.

■■ The primary basis for the Plaintiffs' motion for reconsideration was their claim that the issue of abstention had been extensively briefed by the parties with re-spect to the pending motions for summary judgment and that many issues are raised in this case which are not before the state court. In support of their motion for reconsideration, the Plaintiffs argued not only those issues but also addressed the merits of the abstention question. It is the view of the Court that the Plaintiffs' motion for reconsideration should not be granted. Contrary to Plaintiffs' assertion, the Plaintiffs' brief in support of their motion for summary judgment contains little or no discussion of whether abstention is appropriate in this case and does not address the issue raised by the pending state proceeding but rather discusses whether as a general matter abstention is required in a case involving school districts and voting rights. In their opposing brief, the Defendants raised an issue relating to the pending action but phrased the issue solely in terms of whether a stay should be granted and contended that the abstention doctrine was not being advanced by them. Essentially the same argument is set forth in Defendants' brief in support of their motion for summary judgment. None of the briefs filed prior to the Court's order of October 31, 1978 adequately addressed the question of whether the underlying issue of state law in the case relating to the command of the state legislature to reapportion districts such as the Keystone Central School District would obviate the need for a constitutional decision, whether that claim should have been presented to a state forum prior to the initiation of this action, or whether the petition filed by the school district under the Pennsylvania act constituted either a state proceeding in which a question of state law would be resolved which would eliminate the need for constitutional adjudication in a federal court or whether it constituted the filing of an action by a state governmental unit in which the state was so essentially concerned that traditional notions of comity required the dismissal of this action altogether. As the Defendants correctly point out, if dismissal of this case on grounds of comity would be appropriate, it would not be necessary for the Defendants to demonstrate that every issue raised in this case

has been raised or could be raised in the state proceeding. Rather, the Court's goal would be not to interfere unnecessarily with the pending state proceedings even by the issuance of injunctive or declaratory relief with respect to aspects of the case not immediately before the Clinton County Court of Common Pleas. Additionally, there are abstention issues raised by all the allegations of the Plaintiffs' complaint, not just those relating to malapportionment of the School District. The Court is not convinced by Plaintiffs' argument that the Defendants' failure to address those issues prior to this Court's ordering additional briefing on the abstention question constitutes a waiver of the abstention doctrine. Finally, granting the Plaintiffs' motion for reconsideration now or granting it when it was filed would have had no practical effect on this case. Because the case was not filed until August 10, 1978 it was scheduled to be tried as Case No. 39 on the November, 1978 list. Because of the lengthy trial of a criminal case, *United States v. Thomas*, Criminal No. 78–67–1, the Court was able to reach only one civil case on the November, 1978 list in November and has been obliged to place seven of those cases for trial on the January, 1979 trial list. Therefore, if the case had been restored to its original position on the November list, it would in all probability not have been reached prior to the date of this Order because the Court tried cases on its Harrisburg list from December 1, 1978 through December 20, 1978. Consequently, the Court will deny the Plaintiffs' motion for reconsideration of its order of October 31, 1978.

The second issue before the Court is Plaintiffs' motion to strike Defendants' brief in support of abstention which was filed on November 28, 1978 along with a supporting brief. The Defendants filed a brief in opposition to the motion on December 8, 1978. On December 11, 1978, counsel for the Plaintiffs filed a letter advising the Court that in order to expedite decision on the matters pending in this case, the Plaintiffs would not file a reply brief.

In their motion to strike Defendants' brief in support of abstention, the Plaintiffs recognize that a briefing schedule on the issue of abstention was set by this Court's order in the above-captioned case dated October 31, 1978. That order stated that the Plaintiffs should file a brief relating to the question of abstention within 15 days and that the Defendants should file a brief in opposition to the Plaintiffs' brief within 15 days of the date of its filing. Following the filing of the Plaintiffs' motion for reconsideration, the Court issued another order on November 6, 1978 which expedited the briefing schedule with respect to that motion. That order also gave the Plaintiffs the option of relying upon the brief which they filed in support of the motion for reconsideration as their brief on abstention because it addressed the merits of the abstention issue. Subsequently, on November 7, 1978, counsel for the Plaintiffs filed a letter with the Court indicating that the brief would be relied upon with respect to the abstention issue. However, contrary to the Plaintiffs' assertion, the order of November 6, 1978 made no change in the briefing schedule relating to the abstention issue which was set in the October 31, 1978 order. Therefore, as Defendants correctly point out, they had until November 22, 1978, or 15 days from the date of the filing of Plaintiffs' letter incorporating the brief in support of the motion for reconsideration, in which to file a brief in support of abstention. Defendants' brief was filed on that day. The Plaintiffs state in their motion to strike Defendants' brief that they considered all briefing on both the motion for reconsideration and the abstention issue completed following the filing of Defendants' brief in opposition to reconsideration on November 13, 1978 and Plaintiffs' reply brief on November 15, 1978. Clearly, such was not the case. Consequently, the Plaintiffs' motion to strike Defendants' brief in support of abstention will be denied.

The next issue before the Court is whether the Court should abstain in this case either by staying proceedings until the completion of the action now pending in the Court of Common Pleas of Clinton County,

Pennsylvania, until the resolution of other issues of state law raised by the Plaintiffs' complaint in a state court action which is not now pending or whether the Court should dismiss the case under the doctrine of equitable restraint as announced in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The procedural history relating to the Court's raising of this issue *sua sponte* and the filing of the Plaintiffs' brief in opposition to abstention has been recounted. The Defendants filed a brief in support of abstention on November 22, 1978. As of the date of this Order, the Plaintiffs have not filed a reply brief.

The Court must now consider the question of whether it should abstain from considering the merits of some or all of the claims for relief which the Plaintiffs have asserted. In order properly to rule on the abstention issue, the Court must first set forth in some detail the allegations of the Plaintiffs' complaint in order to determine both the bases of their claims and the type of relief which they request. The Court will then consider whether the abstention doctrine in any of its considerable variations or the doctrine of equitable restraint would justify either the postponement of this Court's jurisdiction pending resolution of issues of state law in a state court or the dismissal of the action altogether.

Liberty Curtin Concerned Parents and Sugar Valley Concerned Citizens are both unincorporated associations whose members are residents, voters, taxpayers and parents of school children in either Centre County or Clinton County, Pennsylvania. The actions challenged by the complaint in this court include the decision of the Keystone Central School Board to transfer certain students from Bald Eagle Nittany High School to Lock Haven High School and to close Sugar Valley High School. The complaint alleges that both actions are unconstitutional because the alleged malapportionment of the Keystone Central School District has precluded voters in the District from exercising equal voting rights in the selection of the school directors. Count 1 of the complaint, labelled "reapportionment," states that the nine voting regions within the Keystone Central School District were created in 1970 and that, as created and now existing, they violate the one-man, one-vote principle enunciated in relevant Supreme Court cases dealing with voting rights, that the districts are gerrymandered in that they have been drawn without regard to traditional geographical or other regional boundaries in an arbitrary fashion, and that they are not contiguous or compact. Count 1 asserts that the current apportionment of the Keystone Central School District violates both the United States Constitution and provisions of state law relating to the creation and review of the apportionment of school districts and seeks an injunction preventing the relocation of the Liberty Curtin students from Bald Eagle Nittany High School to Lock Haven High School, the redistricting of the School District either by the Court or by means of issuance of a writ of mandamus to the appropriate authorities to realign the district, a declaratory judgment holding that the School District is malapportioned in violation of both constitutional and statutory law, and monetary damages.

Count 2 of the complaint concerns both the decision made to relocate the Liberty Curtin students and to close Sugar Valley High School and alleges that the decisions were arbitrary and capricious and in violation of the due process clause, the equal protection clause, and other provisions including a portion of the Pennsylvania School Code. Count 2 seeks an injunction against the transfer and closure, a redistricting of the School District, a declaratory judgment, and monetary damages. Count 3 is similar to Count 2 in relation to the legal claims set forth and alleges that the funds within the School District are applied unequally to the students based upon the taxable wealth of their parents in violation of both the United States and Pennsylvania constitutions. Again, the relief requested is an injunction relating to the transfer of the Liberty Curtin students and the closing of Sugar Valley High School, redistricting of the School District, a declaratory judgment, and monetary

damages. It is the view of the Court that any decision relating to the abstention question should be limited to those portions of the complaint requesting injunctive and declaratory relief and, to the extent that the remedy of redistricting the School District or issuing a writ of mandamus to appropriate officials to redistrict is included in the equitable powers of the Court, to that remedy. It is the view of the Court that because abstention is an equitable doctrine, it may not be applied to actions at law for monetary damages and thus those portions of the complaint relating to monetary damages would survive even if the Court decided to abstain with respect to the other relief requested. This Court indicated in *Clark v. Lutcher*, 436 F.Supp. 1266 (M.D.Pa. 1977) that at least with respect to the equitable restraint doctrine characterized by the decision of the United States Supreme Court in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and its progeny, such a doctrine has no application to a claim at law for money damages. Further support for the Court's position on this issue is found in *McKnight v. SEPTA*, 583 F.2d 1229 (3d Cir. 1978) where the Court remanded damage issues to the district court and thereafter considered an abstention question as it related to injunctive and declaratory relief, thus implicitly indicating that the doctrine was not applicable to the former type of claim. *See also Baltimore Bank for Cooperatives v. Farmers Cheese Cooperative*, 583 F.2d 104, 111 (3d Cir. 1978).

Aside from the Plaintiffs' claim for money damages, the relief requested in each count of the complaint is threefold. The Plaintiffs seek first a preliminary and permanent injunction preventing the transfer of the Liberty Curtin students from Bald Eagle Nittany High School to Lock Haven High School and preventing the planned closure of the Sugar Valley High School. Second, the Plaintiffs request the Court to exercise its jurisdiction to enforce a valid redistricting of the School District or in the alternative to issue a writ of mandamus to the appropriate authorities to redistrict. Third, the Plaintiffs seek a declaratory

judgment holding that the School District is malapportioned, that the Defendants have acted in clear violation of federal and state law or in bad faith, and that the proposed transfer of the Liberty Curtin students and proposed closure of the Sugar Valley High School is unconstitutional. The issue of most concern to the Court at this point is the Plaintiffs' request for a reapportionment of the School District and a declaratory judgment that the current apportionment violates constitutional and statutory standards and it was the pendency of an action in the Court of Common Pleas of Clinton County, Pennsylvania relating to the apportionment issue which led to this Court's order that further briefing be submitted on the question of abstention. Therefore, the Court will deal with that aspect of the complaint first.

■ First, the Court must consider whether it would be proper to abstain from the exercise of its jurisdiction with respect to the reapportionment claim under the traditional abstention doctrine. The first prong of that doctrine, which has its strongest roots in the case of *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), is generally recognized as permitting a federal court to stay the exercise of its jurisdiction where a federal constitutional claim is premised on an unsettled question of state law whose determination by a state court might avoid or modify the constitutional issue. *See D'Iorio v. County of Delaware*, 592 F.2d 681 (3d Cir. 1978); *McKnight v. SEPTA*, 583 F.2d 1229, 1240 (3d Cir. 1978); *see also Clark v. Lutcher*, 436 F.Supp. 1266, 1271 (M.D.Pa.1977). Although *Pullman* abstention arises in many different contexts, the most common involves a challenge to a state statute or administrative enactment on federal constitutional grounds where the state law must be interpreted prior to reaching the federal constitutional issue. *See, e. g., Bellotti v. Baird*, 428 U.S. 132, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976); *Harrison v. NAACP*, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959). In such a situation, if the state law being assailed could be construed in a man-

ner which would avoid the need for a constitutional adjudication, a federal court should decline to reach the constitutional issue and should require the parties to seek an interpretation of the state law in a state court. The latter course of action is advisable both because state courts have more expertise in their interpretation of state law and because an interpretation of state law by the highest court of the state is definitive whereas any federal construction of a state provision is simply a prediction of what the state's highest court would do were it faced with the same issue of statutory construction. However, even where a federal constitutional issue is premised on the construction of an uncertain issue of state law, abstention is not always required. It must also serve some important countervailing interest. For example, in *McKnight v. SEPTA*, 583 F.2d 1229 (3d Cir. 1978), the Court of Appeals indicated that abstention would not necessarily be required where the state law issue in the case was neither difficult nor novel and where a ruling which would permit the Court to reach the constitutional issue did not involve the possibility of upsetting sensitive state programs. In that case, a discharged employee challenged his termination on due process grounds, contending that state law provided him with a reasonable expectation of continued employment. The Court of Appeals stated that if a federal court construed state law so as to create a property interest cognizable under the due process clause, the only adverse impact upon the state would be the requirement that it afford minimal due process protections to individuals covered by the statute. The state would remain free to hire and fire individuals based upon whatever grounds it saw fit or to alter its statutory scheme so as to remove the expectation of continued employment. Therefore, because there were no important countervailing interests served by abstention, it was not required.

■ *Pullman* abstention does not always involve a direct attack on the constitutionality of a state statute. For example, in *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) itself the Plaintiffs brought suit to enjoin an order of the Texas Railroad Commission whose authority was purportedly derived from a particular provision of Texas law. The parties claimed both that the order exceeded the Commission's statutory authority and that it violated the United States Constitution. The Supreme Court directed the District Court to abstain so that a Texas court could consider the question of whether the Commission had exceeded its statutory authority because a resolution of that question favorable to the Plaintiffs would obviate the need to reach the constitutional issue. It is the view of the Court that the fact situation in *Pullman* is similar to the one involved in this case. With respect to the reapportionment claim, it is clear from a reading of the Plaintiffs' complaint that they believe that the current alignment of the Keystone Central School District violates both the Equal Protection clause of the federal constitution and provisions of Pennsylvania law including the Act of July 1, 1976, P.L. 523, No. 124, §§ 1 and 6, the former of which is codified at 25 P.S. § 2702. Section 6 of the Act states that any school district which crosses county lines and in which regions are composed of noncontiguous election districts shall be reapportioned by the Court of Quarter Sessions of the appropriate county involved. It is undisputed that in this case the Keystone Central School District includes two townships located in Centre County, the remainder of the District is located in Clinton County, and that the election districts are not contiguous. Therefore, it would appear that the School District is apportioned in violation of state law because reapportionment was not undertaken within six months of the date of the passage of the Act as required by § 6. It is the view of the Court that a decision on the state law issue favorable to the Plaintiffs and the ordering of a redistricting of the School District in accordance with Pennsylvania law might well obviate the need for the Court to consider the question of whether injunctive relief should properly issue based upon the alleged violations of the Equal Protection

Clause. Whether or not the Court decided to abstain, the state law issue would have to be decided first because even were the Court to retain jurisdiction over the issue the Court is constrained to decide pendent state law claims first if resolution of those claims would obviate the need for constitutional adjudication. *See Siler v. Louisville & National R. R.*, 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753 (1909); *Gagliardi v. Flint*, 564 F.2d 112, 126 (3d Cir. 1977) (Gibbons, J., concurring). Therefore, with respect to the reapportionment issue, the real question facing the Court is whether the Plaintiffs' claim that the Keystone Central School District is malapportioned under state law should be decided in the first instance by this Court or by a state tribunal.

Because the *Pullman* abstention doctrine seems to require the presence of an unsettled or uncertain question of state law in the case, if the issue relating to the malapportionment of the School District under Pennsylvania law were clear, the Court would not hesitate to entertain the Plaintiffs' claims. However, as the Defendants point out in their brief on abstention, there appears to be a conflict between certain provisions of Pennsylvania law relating to the reapportionment of school districts. The Act of July 1, 1976, P.L. 523, No. 124 § 1, 25 P.S. § 2702, permits a Court of Quarter Sessions to realign a school district by creating such compact and contiguous districts as it sees fit, to alter existing boundaries, to create new districts out of two or more adjacent districts or parts thereof, or to consolidate adjoining districts. The Act clearly states that if a school district crosses county lines, the district shall be composed of contiguous election districts. However, the Act of August 8, 1963, P.L. 564 § 4, 24 P.S. § 3–303(b) states that boundaries of election districts shall be fixed in order to achieve the goal of equal population and at least one state court has construed that provision to require that where both equal population and contiguity of election districts is not possible, equal population controls. *See In Re Division of Charleroi Area School District*, 47 Wash. Cty.R. 139 (Comm.Pleas, 1967). Conse-

quently, it appears that the state law issue in this case is a matter of at least some dispute which has not been definitively resolved by any Pennsylvania court, especially since the passage of the 1976 act.

█ Once the Court has determined that the *Pullman* factor relating to the presence of a federal constitutional issue and an unsettled issue of state law which if decided, might either obviate the need for a constitutional adjudication or modify the constitutional question involved, is satisfied, the Court must determine whether there are countervailing interests which would favor abstention. One of those interests, identified in *McKnight v. SEPTA*, 583 F.2d 1229 (3d Cir. 1978) is the possibility of disrupting sensitive state programs. Clearly, the Commonwealth has an interest in the alignment of its school districts and that interest has been evidenced by enactments of the state legislature relating to districting and redistricting. Further, the Commonwealth has manifested its interest by its mandate to the Courts of Quarter Sessions of the relevant counties in § 6 of the Act of July 1, 1976, P.L. 523, No. 124 requiring those courts to redistrict any school district crossing county lines which is composed of noncontiguous election districts. Finally, in considering whether state interests will be disturbed, the Court may take cognizance of the fact that within 6 days of the filing of this action by the Plaintiffs, the School District did file a petition for redistricting in the Court of Quarter Sessions of Clinton County, Pennsylvania. According to the parties, the posture of that case now is that on October 25, 1978 the Honorable Thomas C. Raup of Lycoming County, specially presiding, ordered that the district submit a reapportionment plan on or before December 8, 1978 and that a conference relating to the claim be held on December 14, 1978. Judge Raup has promised to render a final decision on the issue of redistricting on or before January 31, 1979. Therefore, any action by this Court at this time would cause at least some interference with the ongoing state redistricting proceeding. Further, the fact that such

redistricting is now being considered by a state court is another factor which the Court may take into account in determining whether or not to abstain in this case. Abstention is generally disfavored where the parties would be subjected to substantial delay and additional expense were they required to submit claims to a state court. In *Bellotti v. Baird*, 428 U.S. 132, 151, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976), the Court indicated that in that case, the availability of a procedure whereby a question of statutory interpretation could be certified directly to the state Supreme Court greatly simplified the abstention analysis because a decision on the question of state law could be had by the litigants in a relatively short period of time. The same ability to resolve an issue of state law in a state court without delay is present in this case. Additionally, the Court may consider administrative efficiency and convenience in declining to decide issues which are substantially identical to those presented in a pending state proceeding. *See Reichman v. Pittsburgh National Bank*, 465 F.2d 16 (3d Cir. 1972). Taking all these factors into account, the Court concludes that it is proper to abstain from further proceedings with respect to the Plaintiffs' claims for injunctive, declaratory, and mandamus relief as to the alleged malapportionment of the Keystone Central School District at least until the question of whether redistricting is necessary under state law and, if so, what is a proper alignment of the school district has been decided in the Clinton County Court. The Court will retain jurisdiction over the Plaintiffs' reapportionment claims so that should the outcome of the state court proceedings prove unsatisfactory, the Plaintiffs would be free to renew their claims. The Court expresses no view at this time as to whether some state judicial remedies should be pursued by the Plaintiffs if they are dissatisfied with the decision in the Clinton County court before the Court will agree to consider the merits of any reapportionment claim.

The Plaintiffs have asserted that abstention in this case would not be appropriate based upon this Court's earlier decision in *Adams v. School Board of Wyoming Valley West School District*, 53 F.R.D. 267 (M.D. Pa.1971) and because the Plaintiffs in this case did not initiate the state court suit nor are they parties to that suit. With respect to the first contention, *Adams* involved a different fact situation in that the School District whose alignment was attacked by the Plaintiffs had been formulated in accordance with a plan approved by the Court of Quarter Sessions of Luzerne County pursuant to 24 P.S. § 3–303(b). Thus, like *McNeese v. Board of Education*, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963), there was no underlying issue of unsettled state law the resolution of which had the potential for eliminating the need for deciding a federal constitutional question or modifying the character of that question. Secondly, the Court of Appeals for this Circuit expressly approved abstention in a case where after the Plaintiff had filed a diversity action in federal court, the federal court defendant instituted a state court proceeding raising similar issues. *See Reichman v. Pittsburgh National Bank*, 465 F.2d 16 (3d Cir. 1972). Thus, the Plaintiffs' contentions do not alter this Court's decision to abstain with respect to the reapportionment claim.

■ The Court's decision to abstain with respect to the Plaintiffs' requests for injunctive, mandamus, and declaratory relief relating to the reapportionment of the School District necessarily entails abstention as well with respect to the Plaintiffs' request that the transfer of the Liberty Curtin students and the closure of the Sugar Valley High School be rescinded based upon the alleged malapportionment. The Court denied such relief to the Plaintiffs on their application for a temporary restraining order because the Court was not convinced that the Plaintiffs had shown any causation between the alleged malapportionment and the actions of the School Board of which the Plaintiffs complain. *See Liberty Curtin Concerned Parents v. Keystone Central School District*, No. 78–780 (M.D.Pa. August 25, 1978), slip opinion at 12–13. In order for the Plaintiffs to

establish their entitlement to such relief based upon malapportionment, they would have to demonstrate to the Court that malapportionment under either state or federal law existed and that the School Board's decision to transfer the Liberty Curtin students and to close Sugar Valley High School was proximately caused by the malapportionment. Consequently, before reaching the question of proximate cause, the Court would be required to determine whether malapportionment existed. Thus, although the requested remedy differs, the underlying factual determination with respect to the apportionment of the school district would be the same as that which would be required before the Court would order reapportionment. Such a factual determination would have the potential for interfering substantially with the ongoing state proceedings, especially in light of the fact that the Court, if it reached the issue, should determine first whether apportionment of the School District is proper under Pennsylvania law. *See Siler v. Louisville & National R. R.*, 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753 (1909). In order to avoid the possibility of conflicting interpretations of Pennsylvania law and conflicting decisions on the question of whether the School District is malapportioned under state law, the Court will also abstain from deciding whether the Plaintiffs are entitled to relief other than redistricting as a result of the alleged malapportionment.

■ Because this Court has concluded that on the reapportionment claim abstention is appropriate under the *Pullman* abstention doctrine, there is no need to consider whether abstention would also be appropriate under the doctrines announced in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) and *Alabama Public Service Comm'n. v. Southern R. Co.*, 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951) or the variation represented by *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959) and *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959). Additionally, the Court need not analyze the issue

with respect to the *Younger* line of equitable restraint cases. *See, e. g., Johnson v. Kelly*, 583 F.2d 1242 (3d Cir. 1978); *New Jersey Education Ass'n. v. Burke*, 579 F.2d 764 (3d Cir. 1978). Because the reapportionment action now pending in the Clinton County Court of Quarter Sessions is the only state proceeding, civil or criminal, which is pending with respect to the allegations raised in the Plaintiffs' complaint, it will not be necessary to examine the remainder of their claims under the *Younger* doctrine. The pendency of some state proceeding is a prerequisite to the ordering of the dismissal of a complaint for injunctive or declaratory relief under the equitable restraint doctrine. *See Clark v. Lutcher*, 436 F.Supp. 1266, 1270 (M.D.Pa.1977) and cases cited therein. Consequently, the Court will now consider the question of whether abstention is required on the other equitable claims presented in the Plaintiffs' complaint.

■ In addition to the injunctive and declaratory relief discussed with respect to the reapportionment issue, the Plaintiffs have requested an injunction prohibiting the transfer of the Liberty and Curtin Township students from Bald Eagle Nittany High School to Lock Haven High School and preventing the planned closure of the Sugar Valley High School. It is the Court's recollection from testimony taken at the hearing on the Plaintiffs' request for a temporary restraining order that the transfer of the Liberty and Curtin students was to have occurred in September of this year. Therefore, any request for an injunction prohibiting that transfer would appear to be moot. Further, the complaint states only with respect to the planned closure of the Sugar Valley High School that the School Board elected to close that facility in a decision dated April 14, 1977. The Court is not aware from a reading of the complaint and the documents relating to the question of abstention whether Sugar Valley High School has in fact been closed. However, even if the closure has taken place, the Court has the power to direct that the school be reopened and that the

Liberty Curtin students be transferred back to Bald Eagle Nittany should the Plaintiffs make out a case for such relief which the Court would be entitled to consider on the merits. *See* F.R.Civ.P. 54(c). The Plaintiffs also seek a judgment declaring that the actions of the School Board with respect to the transfer of the Liberty Curtain students and closure of the Sugar Valley High School are illegal and unconstitutional. Because a similar pattern of allegations underlies these requests for injunctive and declaratory relief, the Court will consider them together.

Aside from the assertions in the complaint with respect to the malapportionment of the Keystone Central School District, the Plaintiffs complain that the decisions made by the School Board which affect the two Plaintiff associations are discriminatory because they do not take into account the geographical, economical, or cultural background of the students who are involved in the two board actions, because there is no economic justification for the transfer of students and the closure of Sugar Valley High School, and because the actions are unsupported either by reasons based upon the relative populations of the three high schools involved or the facilities available at each. Additionally, the Plaintiffs claim that the amount of money spent on each student in the district is a function of the taxable wealth of the parents of school children within a particular region. The Plaintiffs claim that all of the above violate both the equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution and, in addition, violate Article III, § 14 of the Pennsylvania State Constitution which provides that school children shall be given equal opportunities in education. The complaint refers to two sections of Pennsylvania law, the Act of October 19, 1959, P.L. 1324, No. 449, § 1, 24 P.S. § 13–1310 and the Act of June 15, 1965, P.L. 133, § 1 et seq., 24 P.S. § 13–1361 which sections appear to empower a school board to assign pupils to schools within a particular school district and to provide for the free transportation of such pupils. Apparently, the Plaintiffs allege that the authority granted to the School Board in this case by those statutes has been abused because there is no justification for the Board's actions. In order to determine whether abstention is proper on these claims for injunctive and declaratory relief, the Court must determine whether the allegations and the Plaintiffs' complaint fit the required factual or legal pattern of cases in which abstention is found to be appropriate.

As noted above, the *Pullman* abstention doctrine requires that there be an issue of state law in a case which is sufficiently unclear so that it would be prudent as well as economical to permit a state court to decide it in the first instance and that such a decision has the potential for obviating the need to decide a federal constitutional issue. The Court does not believe that the references made in the Plaintiffs' complaint to the two sections of the Pennsylvania School Code constitute the basis for the Plaintiffs' cause of action nor does the Court believe that any construction of those statutes would have any relevance to this action. The Plaintiffs do, however, rest at least a portion of their claim on Article III, § 14 of the Pennsylvania Constitution. The Defendants have suggested in addition to those state law provisions stated in the complaint that the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, as amended, 43 P.S. § 951 et seq. might be relevant in this case. Therefore, the Court will examine the state law provisions involved in order to determine whether they are sufficiently unclear to make their decision by a state court an advisable course of action and whether any decision based upon those provisions would eliminate the need for this Court to rule on the merits of the Plaintiffs' claims under the equal protection and due process clauses of the Fourteenth Amendment.

First, the Court will consider whether Article III, § 14 of the Pennsylvania Constitution is the type of state law issue which would require *Pullman* abstention. That section, which relates to a legislative power, states that the Common-

wealth "shall provide for the maintenance and support of a thorough and efficient system of public education." The Defendants assert both that the Plaintiffs' complaint alleges a violation of that constitutional section and that it is not clear whether Article III, § 14 will be interpreted by Pennsylvania courts to prohibit variations in the amount of money spent on school children based upon the taxable wealth of their parents. However, the Court is not convinced that the Plaintiffs' complaint does in fact allege a violation of the Pennsylvania Constitution. The complaint states in ¶ 61 that "inexorably bound" to the plaintiffs' allegations of violations of the federal constitution is Article III, § 14 and that that provision is based upon the Fifth and Fourteenth Amendments to the federal Constitution. However, it may well be that the Plaintiffs cite that constitutional provision only to indicate that the Commonwealth has undertaken the responsibility of providing equal opportunities of education for all its school-age children. Although a state is not required to provide the opportunity of a free education for its inhabitants by the federal Constitution, where it has assumed that obligation the opportunity becomes a right which must be made available to all on equal terms. *See Bichrist v. School District of Philadelphia*, 346 F.Supp. 249, 253 (E.D.Pa.1972), *citing Brown v. Board of Education*, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954). Therefore, proof that the state has assumed an obligation to educate its residents is a prerequisite to alleging a violation of the Equal Protection Clause of the Fourteenth Amendment but does not necessarily indicate that the scheme which the state has adopted is in violation of any state law. Further, the Defendants have brought no cases to the Court's attention dealing specifically with the issue presented by the Plaintiffs' complaint in this case and the Court's research has disclosed none. Consequently, the first requirement of the *Pullman* doctrine is not satisfied by Article III, § 14 of the Pennsylvania Constitution and abstention on the issue of the Keystone Central School District's taxing and spending policies is not required on that ground.

The Defendants have also cited the Pennsylvania Human Relations Act, Act of October 27, 1955, P.L. 744, as amended, 43 P.S. § 951 et seq., as having some application in this case. However, in 43 P.S. § 952(a), which sets forth the policy of the Act, the Pennsylvania legislature expresses its concern about the denial of equal employment, housing, and public accommodation opportunities to individuals based upon their race, color, religious creed, ancestry, age, or national origin. The Act does not on its face apply to public education and appears in the section of the Pennsylvania statutes relating to labor. Therefore, the Court is not convinced that the Pennsylvania Human Relations Act has any application to this case.

Although the Court has concluded that *Pullman* abstention is not required with respect to the Plaintiffs' allegations concerning the taxing and spending policy of the School District, such a conclusion does not end the Court's inquiry into whether abstention is advisable. The Court must consider whether the state interests involved in this case are so sensitive that the exercise of federal jurisdiction would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. *See, e. g., Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814–15, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *Alabama Public Service Comm'n v. Southern R. Co.*, 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951); *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). In *Burford* the Court ordered abstention in a case involving a challenge to oil and gas regulation in the state of Texas. At that time, although Congress had power over the regulation of oil and natural gas, such regulation had been largely left to the discretion of the states and Texas had established a commission to regulate production and sale of oil and natural gas whose decisions were reviewable in a particular state court which had developed an expertise with respect to the matters before it. Federal courts which

had exercised jurisdiction over questions of law relating to the Texas regulatory scheme had decided questions differently from the state court and had caused a substantial amount of conflict and uncertainty in Texas's scheme to regulate the production and sale of oil and natural gas. It is the view of the Court that such a conflict does not exist in this case and that education, although a matter of public concern which is regulated by the state, is not the type of issue which should be immune from federal judicial review on that basis. This Court has, in past cases, decided questions relating to the educational system in Pennsylvania without concluding that *Burford* abstention was required. *See, e. g., Adams v. School Board of Wyoming Valley West School District*, 53 F.R.D. 267 (M.D.Pa. 1971). The United States Supreme Court has entertained a challenge to state spending and taxing policies relating to education in a case similar to this one. *See San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Although the Court expresses no view in ruling on the abstention issue as to whether the Plaintiffs will be able to establish a violation of the Equal Protection Clause, the Court believes that it is proper to permit the Plaintiffs to produce evidence relating to their claim that a classification has been adopted by the Keystone Central School District which does not treat residents of the School District in an equal fashion and which has no rational basis to support it.

Because the Court has concluded that not all of the issues raised by the Plaintiffs' complaint in this case are subject to abstention, it is now appropriate to consider the cross-motions for summary judgment insofar as they relate to matters which the Court need not refrain from deciding. Prior to considering the merits of those motions, however, the Court must rule on the Defendants' motion to strike affidavits filed by the Plaintiffs in support of their motion. The Defendants' motion and accompanying brief were filed on October 13, 1978 and the Plaintiffs filed a responsive brief on October 23, 1978. As of the date of this Order, no reply brief has been filed.

The Defendants contend that the affidavits of Carla McElwain, Clifford Baughman, Donna Bitner, and Stephen Pollard which were submitted in support of the Plaintiffs' motion for summary judgment should be stricken because they are not based on the personal knowledge of those affiants as required by F.R.Civ.P. 56(e). The affidavits state that the facts set forth therein are true and correct to the best of the declarant's knowledge, information and belief. The Defendants contend that such a statement is insufficient to demonstrate that the affidavits are based upon the personal knowledge of the persons who made them. In response, the Plaintiffs submitted additional affidavits of those four persons stating that the affidavits were reviewed and that the information contained therein was in fact based upon the personal knowledge of the declarants. It is the view of the Court that the submission of the additional affidavits is sufficient to cure any defects which existed in the averment portion of the original affidavits and, consequently, the Court need not reach the question of whether those affidavits themselves were insufficient. The Defendants' motion to strike will be denied.

The Court must next consider the cross-motions for summary judgment. Both the Plaintiffs and the Defendants filed motions for summary judgment on September 15, 1978. The Defendants filed documents in support of their motion on September 25, 1978 and the Plaintiffs' documents were filed on September 26, 1978. Both parties filed supporting briefs on October 2, 1978. On October 17, 1978, the Defendants filed a brief and documents in opposition to the Plaintiffs' motion and the Plaintiffs filed a brief in opposition to the Defendants' motion. The Defendants filed a reply brief with respect to their motion for summary judgment on October 23, 1978 and the Plaintiffs filed a reply brief with respect to their motion on October 24, 1978. As stated before in this Order, the Court's decision on the merits of those motions was stayed pending the briefing of the abstention issue and the Court's resolution of that question.

The Plaintiffs' brief in support of their motion for summary judgment makes three arguments. They contend that they are entitled to summary judgment on the claims that the School District is malapportioned and gerrymandered, that the expenditure policies of the District violate the Fifth Amendment, and that the relocation of the students in question violates other provisions of the federal Constitution. However, in their brief the Plaintiffs argue for summary judgment only with respect to the first issue, recognizing that cross-affidavits filed by the Defendants create disputes of material fact with respect to the latter two claims. The Court has concluded that abstention is proper with respect to the merits of the first claim. Therefore, because the Plaintiffs do not press their request for summary judgment with respect to the issues in this case which the Court may decide, the Court need not resolve any matters presented by the motion for summary judgment filed by the Plaintiffs and that motion will be dismissed as moot. In so dismissing the motion, the Court does not imply that factual disputes actually exist with respect to the second and third issues but bases its ruling merely upon the fact that the Plaintiffs have withdrawn their request for the grant of summary judgment on those issues.

The final issue before the Court is whether the Defendants are entitled to summary judgment on any issues in this case. The Defendants raise five grounds in their motion for summary judgment. They contend that the Plaintiff associations lack standing to assert any damage claims in this action, that it is inappropriate for a federal court to undertake review of decisions of a body such as the School Board of the Keystone Central School District, that even assuming that the Plaintiffs' allegations of malapportionment are true, the actions taken by the School Board are not unconstitutional and may not be set aside by this Court, that the decision of the School Board to transfer the Liberty Curtin students has a rational basis and that there has been no decision made to close the Sugar Valley High School, and that the Court should stay consideration of the claims of the Plaintiffs relating to malapportionment pending the decision of the Court of Common Pleas of Clinton County, Pennsylvania, on the reapportionment question. The third and fifth grounds raised relate to questions on which the Court has decided to abstain and will not be considered. The Court will deal with grounds 1, 2 and 4 *seriatim*.

■ First, the Defendants claim that the Plaintiff unincorporated associations lack standing to claim damages in these actions. They assert based upon *Warth v. Seldin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) that an association has standing to sue on behalf of its members for damages only if the association has alleged that its members have suffered some common injury and that if the nature of the claim and the relief sought makes the individual participation of each injured party indispensable to proper resolution of the cause, the association is not an appropriate representative of its members. This standing question is also raised in the Defendants' motion to strike the Plaintiffs' demand for a jury trial and this Court ruled on October 30, 1978 that, taking the allegations of the complaint as true, the Plaintiffs had alleged that each member of the Plaintiff associations had suffered some common damage. The Court viewed the question of whether the Plaintiffs were entitled to a jury trial on the damage issue as being raised prematurely absent evidence that the Plaintiffs would be unable to prove some common damage. It is the view of the Court that the same reasoning applies to the Defendants' motion for summary judgment. The only facts relied upon by the Defendants in support of summary judgment on the damage issue are certain statements taken from the testimony of Dr. Stephen Pollard, a psychologist who testified on behalf of the Plaintiffs at the temporary restraining order hearing. Those statements by themselves do not establish that the Plaintiffs will not be able to prove damages common to each member of the association at trial. Therefore, the issue is not in a posture substantially different

from that which the Court considered in ruling on the motion to strike Plaintiffs' demand for a jury trial and a similar result will be reached with respect to the Defendants' motion for summary judgment on this issue.

Secondly, the Defendants assert that federal court interference in the day-to-day decision of a local school board is inappropriate. In support of this contention, the Defendants cite *Scheelhaase v. Woodbury Central Community School District*, 488 F.2d 237 (8th Cir. 1973), cert. denied, 417 U.S. 969, 94 S.Ct. 3173, 41 L.Ed.2d 1140 (1974) and *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). In the former case, however, the Court declined to review the decision of a local school board to terminate the employment of a teacher because the teacher had no property interest under state law and absent such a state law pronouncement, no federal constitutional provisions were implicated. The case involved a "substantive due process" challenge to the actions of the School Board. In *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), the United States Supreme Court stated that 42 U.S.C. § 1983 does not provide a vehicle for challenging in a federal court the wisdom of decisions made by school administrators. However, the Court did state that when a specific constitutional provision is allegedly violated by such actions, a § 1983 Plaintiff should be permitted to demonstrate the existence of such a constitutional violation. As the Court noted above, where actions of a school authority are challenged on the basis that they violate constitutional provisions such as the Equal Protection Clause of the Fourteenth Amendment which is applicable to all actions taken by state agencies which subdivide the subjects of those actions into groups and treat them differently according to that provision, a cognizable constitutional claim is presented. *See, e. g., San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Additionally, assuming that the due process clause is implicated in some way by a decision of the local school authorities, the Court has jurisdiction to entertain the suit based upon the alleged violation of that provision. *See, e. g., Ross v. Penn State University*, 445 F.Supp. 147 (M.D.Pa.1978). In support of their argument for nonintervention, the Defendants cite certain facts which relate to the contention that the School Board's decision to transfer the Liberty Curtin students was a rational decision based upon years of investigation and deliberation. However, that contention relates to the merits of the decision and not whether the Court should entertain a challenge to it in the first instance. The Court will consider the factual assertions of the Defendants as they relate to their argument that the decision to transfer the Liberty Curtin students had a rational basis and therefore did not violate the equal protection clause.

Before examining the factual evidence relied upon by the Defendants in support of that contention, the Court must determine the level of equal protection analysis to be applied to the actions of the School Board. The Defendants contend that the issue should be decided under the traditional "rational basis" theory of equal protection analysis because there is no suspect classification present in this case and because the actions of the School Board did not infringe upon any fundamental rights of the Plaintiff associations. If such a test were adopted, the Court's only inquiry would be to determine whether the classification made by the School Board is rationally related to a legitimate state objective or whether it rests on grounds wholly irrelevant to the achievement of the state's goal. *See McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); *Benner v. Oswald*, 444 F.Supp. 545, 561 (M.D.Pa.1978). The Defendants argue that a classification of persons based upon their economic or social status has never been determined to be "suspect" by the United States Supreme Court. In *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), the Supreme Court stated that a classification based upon the taxable property wealth of the

residents of a school district was different in character from classifications based upon race or alienage and that it should not be designated as a "suspect" classification. *See Jefferson v. Hackney*, 406 U.S. 535, 92 S.Ct. 1724, 32 L.Ed.2d 285 (1972); *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). Therefore, the Court concludes that no suspect classification is involved in this case.

The Court must also determine, however, whether the action of the School Board infringes upon any fundamental rights of the Plaintiff associations. *See, e. g., Harper v. Virginia Board of Elections*, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966). The Defendants contend that a school-age student has no fundamental right to choose the school in which he is educated. In *Broussard v. Houston Independent School District*, 395 F.2d 817 (5th Cir. 1968), the Court, in approving a "freedom of choice" plan to desegregate Houston's schools, stated that the school child has no inalienable right to choose his school. *See also United States v. Jefferson County Board of Education*, 380 F.2d 385 (5th Cir.), *cert. denied*, 389 U.S. 840, 88 S.Ct. 77, 19 L.Ed.2d 104 (1967); *Sando v. Alexandria City School Board*, 330 F.Supp. 773, 775 (E.D.Va.1971). The Court agrees with Defendants that the transfer of the Liberty Curtin students from Bald Eagle Nittany High School to Lock Haven High School, even if motivated by discrimination on the basis of the taxable wealth of their parents, involved neither a suspect classification nor a fundamental right and should be judged under the rational basis analysis. *See Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976) (per curiam).

The Defendants assert that the basis for the decision to transfer the Liberty Curtin students was serious overcrowding at Bald Eagle Nittany High School. They cite the testimony of John C. Anderson at the temporary restraining order hearing indicating that the Middle States Association had, in reviewing Bald Eagle Nittany High School for renewed accreditation, expressed concern about the overcrowding there and that 19 work sessions plus two regular meetings of the School Board were held between 1976 and 1978 before the decision to transfer the Liberty Curtin students was made. Public input was invited at those meetings. Consequently, the transfer was legitimately related to the school district's objective of reducing overcrowding at Bald Eagle Nittany High School and thus furthering its chances of receiving renewed accreditation. With respect to the claim based upon wealth discrimination, the Defendants cited an affidavit of Lewis McGill indicating that the per pupil expenditure at Lock Haven High School is greater than such expenditure at Bald Eagle Nittany High School and thus the situation of the Liberty Curtin students has actually improved following their transfer. Therefore, they contend that those students have not been injured by any alleged discrimination based upon the taxable wealth of students' families.

The Plaintiffs claim in opposition to the Defendants' motion for summary judgment that the affidavit relied upon by the Defendants is factually incorrect. The Plaintiffs' cross-affidavit submitted by Carla McElwain indicates that in terms of instructional spending, more money is spent per pupil at Lock Haven High School than at Bald Eagle Nittany High School and more at Bald Eagle Nittany than at Sugar Valley High School. Her figures differ from those set forth in the McGill affidavit. Although the amounts may be in dispute, both parties seem to agree that more money is spent on Lock Haven students than on Bald Eagle Nittany students. Therefore, this factual dispute does not appear to be material insofar as it relates to the transfer of the Liberty Curtin students. The Plaintiffs also assert, however, that the transfer of the students was not based upon concern for any legitimate state objective. In support of this contention, they cite a deposition which indicates that no alternatives to the transfer of Liberty Curtin students were presented to the School Board and it considered no other courses of action. The Plaintiffs also dispute by deposition testimony the fact that the reason for the relocation was overcrowding at Bald Eagle Nit-

tany High School and assert that the capacity of the high school differs from that advanced by the Defendants and that at the time of the transfer the high school was well within its capacity. It is the view of the Court that at least with respect to the Defendants' contention that the decision to transfer the Liberty Curtin students was rationally related to relieving overcrowding at Bald Eagle Nittany High School, the Plaintiffs have raised a dispute of a material fact. If the high school was not overcrowded and Plaintiffs can demonstrate that fact at trial, the Defendants would be obligated to supply another legitimate objective which was furthered by the transfer of the students in order to justify their action.

█ Because the Court has determined previously that there does not appear to be a material factual dispute in this case with respect to the Defendants' contention that more money is expended per pupil at Lock Haven High School than at Bald Eagle Nittany High School, the Court must consider whether that contention is sufficient to justify the entry of judgment in favor of the Defendants on that issue. The Court is of the view that at least with respect to the Liberty Curtin students no injury to them has been caused by any unequal spending policies within the School District. Because they have been transferred to the high school whose students receive more expenditure than any other school in the district, they have actually been benefited by the transfer insofar as per pupil expenditure is concerned and cannot claim that they are deprived of educational opportunities because of any alleged spending inequality. The complaint does allege, however, that sums of money for students at the three high schools involved in this case have been appropriated which are unequal and discriminatory and the facts submitted by the Plaintiffs indicate that the Sugar Valley students received the lowest amount of per pupil expenditure. Because Sugar Valley Concerned Citizens is a plaintiff in this action and children of its members apparently still attend Sugar Valley High School, it may be that the Plaintiffs are entitled to demonstrate at trial that there is no rational basis for the inequality in spending with respect to the Sugar Valley students. Whether they would be entitled to the relief sought in the complaint, namely preventing the alleged planned closure of Sugar Valley High School, on the basis of such inequality is not clear. However, as the Court noted above, if the Plaintiffs can prove a constitutional violation they are entitled to whatever remedy is appropriate. Therefore, the Court cannot grant the Defendants' motion for summary judgment because at least some issue in the case turns on the alleged inequality in spending and the Defendants have not contended or produced facts in support of an assertion that the spending levels at Sugar Valley High School are at least as high as those at Lock Haven High School or that there is a rational basis for the spending difference alleged by the Plaintiffs.

The Plaintiffs have also alleged a violation of the due process clause based upon their assertion that the decision of the School Board was arbitrary and capricious. The Defendants contend that in order for the due process clause of the Fourteenth Amendment to be implicated by state action, some property or liberty interest belonging to the complaining party must be implicated. *See, e. g., Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). The Defendants argue that the Plaintiff association's children have no protected property or liberty interest in the location of the high school which they attend. For example, in *Wallis v. Blue*, 263 F.Supp. 965 (M.D.Ga.1967), the Court concluded that a taxpayer had no property interest in the composition of a school district, its location, its size, curriculum, and the management of the public schools therein. In response, the Plaintiffs have not contended that they have a property or liberty interest in where their children attend school or that such an interest has been infringed upon without proper procedures. Rather, they make the same argument on the due process claim which is asserted in support of the equal protection claim, namely that the decision of the School Board to relocate the Liberty Curtin students has no rational basis. It is the

view of the Court that any claim by the Plaintiffs which is asserted under the due process clause could rest only on some notion of substantive due process which would permit the Court to set aside a decision of the School Board which it found to be arbitrary or without foundation even though no property or liberty interest of the persons affected by the School Board action has been infringed. The Court would be hesitant to undertake such a review of decisions of local governmental authorities. However, the Court need not decide at this time whether the Plaintiffs have asserted a claim cognizable under the due process clause because the factual bases of that claim are the same as the underpinnings of the Plaintiffs' equal protection claim. The Court has concluded that an issue of material fact is in dispute with respect to the latter legal theory. Therefore, the proper course of action to follow, assuming that no further motions for summary judgment are filed, is to permit the Plaintiffs to adduce their proof at trial with respect to the actual basis for the School Board's decision to transfer the Liberty Curtin students. At that time, the Court will make a decision as to whether any constitutional provision, be it the equal protection clause or the due process clause, has been violated by the Board's actions.

It is now the Court's view that the primary thrust of this action has been removed from the Court's consideration by the decision to abstain on the malapportionment issue. The Plaintiffs introduced evidence relating primarily if not exclusively to that issue at the hearing on August 22, 1978. The issues now remaining can fairly be tried in March, 1979 and the requests for injunctive and declaratory relief and damages will both be considered at that time.

Based upon the foregoing, the Court will enter an appropriate order denying the Plaintiffs' motion to strike the Defendants' brief in support of abstention, denying the Plaintiffs' motion for reconsideration of the order of October 31, 1978, staying consideration of the issue of malapportionment pending the outcome of state proceedings in the Court of Common Pleas of Clinton County, Pennsylvania, denying the Defend-

ants' motion to strike affidavits filed in support of the Plaintiffs' motion for summary judgment, dismissing the Plaintiffs' motion for summary judgment as moot, denying the Defendants' motion for summary judgment, and placing the case on the March, 1979 trial list.